# In the United States Court of Federal Claims

No. 13-165C
(Filed: November 30, 2015)

**************************************

| | | |
|---|---|---|
| JASON CARL KENNEDY, | * | Military Pay; NROTC Scholarship; 10 |
| | * | U.S.C. §§ 2005, 2107; 37 U.S.C. § 209; |
| Plaintiff, | * | Motion to Dismiss; Subject Matter |
| | * | Jurisdiction; Statute of Limitations; |
| v. | * | Mootness; Justiciability; Cross-Motions for |
| | * | Judgment on the Administrative Record; |
| THE UNITED STATES, | * | Final Agency Action Subject to Judicial |
| | * | Review |
| Defendant. | * | |

**************************************

<u>Jason C. Kennedy</u>, Denver, CO, <u>pro se</u>.

<u>William J. Grimaldi</u>, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff Jason Carl Kennedy, proceeding <u>pro se</u>,[1] contends that he was improperly disenrolled from Officer Candidate School ("OCS") and the Naval Reserve Officers Training Corps ("NROTC"), depriving him of the scholarship benefits to which he was entitled pursuant to the financial assistance program administered by the United States Department of the Navy ("Navy"). Defendant moves to dismiss plaintiff's claims, and the parties cross-move for judgment on the administrative record. For the reasons set forth below, the court grants in part and denies in part defendant's motion to dismiss, denies plaintiff's motion for judgment on the administrative record, and grants defendant's cross-motion for judgment on the administrative record.

---

[1] Although plaintiff is a licensed attorney, Am. Compl. ¶ 57, he is proceeding <u>pro se</u> in this litigation.

# I.  BACKGROUND

## A.  Factual History

Upon enrolling at The George Washington University ("GWU") as an undergraduate in August 2003, plaintiff joined the NROTC.[2]  AR 174-89, 408.  During the spring semester of his sophomore year, plaintiff was awarded an NROTC scholarship.  Id. at 400-04.  To formally receive the scholarship, plaintiff executed, on March 16, 2005, an "Enlistment/Reenlistment Document" ("enlistment agreement"), attached to which was "Annex A," an "NROTC Scholarship Service Agreement" ("scholarship agreement").  Id.

The enlistment agreement indicated that plaintiff was enlisting in the United States Marine Corps ("Marines Corps") Reserve for eight years at the E-1 pay grade, effective March 16, 2005.  Id. at 400.  It further indicated that "additional details" of plaintiff's enlistment were included in the appended scholarship agreement.  Id.  The scholarship agreement, which does not bear plaintiff's signature,[3] provided, in relevant part:

I.  SERVICE OBLIGATIONS INCURRED

A.  By Title 10, United States Code Section 2107, I hereby acknowledge that to be eligible for appointment as a midshipman and for participation in the financial assistance program . . . I must enlist in the U.S. Naval Reserve for the following:

1.  If entering the NROTC Program from civilian life, I will enlist in the U.S. Naval Reserve for eight years.

. . . .

B.  As a condition of my appointment as a midshipman, I agree that:

1.  I will major in an academic subject leading to a baccalaureate degree approved by the commanding officer of the NROTC Unit; and

---

[2]  The court derives the factual and procedural history from the remand administrative record ("AR")–which includes the original administrative record at pages 331 to 442–and the parties' filings.

[3]  The second pages of the copies of the scholarship agreement included in the administrative record are cut off at the top (heading "II" is missing), see, e.g., AR 50, 191, 369, 404, suggesting the possibility that the administrative record does not include a complete copy of the scholarship agreement.

2.  I will satisfactorily complete the NROTC curriculum and military requirements as required; and

3.  Upon completion of all requirements, and at the discretion of the Secretary of the Navy, I will accept an appointment, if offered, as a commissioned officer in the U.S. Naval Reserve or the U.S. Marine Corps Reserve and serve at least eight years as a Reserve Officer with an active duty obligation for at least four years.  After one year of active duty service, I may request to augment to a regular U.S. Navy or U.S. Marine Corps commission.  . . .

4.  If I do not complete the four-year course of instruction, or if I complete the course but decline to accept a commission when offered, I may be ordered to active duty by the Secretary of the Navy to serve in an enlisted status for four years, or for such lesser period as the Secretary may prescribe.  . . .

"I certify that I fully understand that I am entitled to NROTC Scholarship benefits for only 3 years."

[II.]

A.  As a condition of receiving advanced educational assistance, I further agree that:

1.  If I fail to complete educational requirements identified in paragraphs I.B1-2, or for reasons of misconduct I am disenrolled, then, at the discretion of the Secretary of the Navy, I will either serve on active duty as specified in paragraph I.B.4, or reimburse the United States for the educational costs expended on my behalf.  Misconduct is defined as serious breach of discipline (theft, drug usage, or other serious crime or a matter of serious moral turpitude).

. . . .

B.  I understand educational assistance to mean all costs related to tuition, fees, and laboratory expenses paid by the government either directly to me or in my behalf.

. . . .

IV.  OTHER TERMS AND CONDITIONS (ALL APPLICANTS)

A.  I understand the Secretary of the Navy may release me from my obligation under this agreement.  I may be separated from the training program at any time if, in the opinion of the Secretary, the interests of the Navy would thereby be served.

    B.  I understand to continue my eligibility in the NROTC Program I must remain in good standing at the college in which I am enrolled.  As well, I must remain in good standing with the NROTC Unit.

Id. at 403-04.  Plaintiff ultimately received scholarship payments for the spring 2005 semester, the fall 2005 semester, and the spring 2006 semester, for a total of $50,675.  Id. at 405-07.

During the summer of 2005, plaintiff was abused by a family member.  Id. at 206.  The abuse continued after he returned to GWU and through the remainder of the year.  Id. at 291, 409.  In November 2005, plaintiff was seen at the GWU hospital emergency room and diagnosed with an adjustment disorder.  Id. at 195, 201.  He subsequently underwent counseling, id. at 211, and when plaintiff terminated the counseling in February 2006, his psychologist indicated that he continued to suffer from an adjustment disorder, id. at 206.

Plaintiff entered Marine Corps OCS in May 2006.  Id. at 133, 357.  During plaintiff's third week at OCS, his platoon commander, Captain Will Fenwick, prepared a Command Evaluation that provided the following:

    Emotionally unstable.  SNC lost control of his emotions in front of his platoon.  SNC lost control of his emotions in front of his Platoon Commander on two occasions and was on the verge of losing control in front of the Company PTI.  SNC has personal issues he is dealing with and has sought counsel from the chaplain at least 5 different times.  SNC has leadership potential, but needs to resolve his personal issues in a satisfactory manner and return to OCS once they are resolved.

Id. at 359.  Captain Fenwick recommended that plaintiff be disenrolled from OCS, but allowed to reapply at a later date.  Id.  In response to this evaluation, plaintiff wrote:

    This candidate [recognizes] that he has lost control of his emotions twice.  Further, he [recognizes] that such conduct is absolutely unacceptable.  This candidate is dedicated to the Corps.  Further, in all other regards this candidate has performed well.  Yesterday, after talking to the [chaplain,] he refocused his priorities and has never been more [committed] to the Corps and OCS as he is now.  The candidate believes that he can [successfully complete] OCS without further incident.

Id.

Plaintiff's company and battalion commanders subsequently provided their recommendations on a Commanders Endorsement; both recommended that plaintiff be disenrolled from OCS and not permitted to reapply.  Id. at 360.  The company commander wrote:

-4-

> SNC is emotionally unstable and not capable of handling himself in front of Marines. He is undoubtably a good kid, but breaks down in tears when faced with stress or responsibility. He may be capable of returning to OCS at a later date if he could pull himself together. However, I [shudder] to think about how he would perform in combat? [sic] It is just too big a chance to take with the lives of our Marines! SNC is emotionally unfit to lead & should not return.

Id. The battalion commander wrote: "Too many personal issues. Mental health issues that make the staff concerned about his well-being & potential. I agree–I cannot believe this is reparable." Id.

A Commanding Officer's Board was convened on June 22, 2006. Id. at 358. Plaintiff advised the commanding officer, Colonel Robert Chase, that his problems were with his family, and not OCS, and that he did not know whether the problems could be fixed. Id. Based on this information, Colonel Chase told plaintiff that he would disenroll him from OCS and not allow him to reapply. Id. That same day, plaintiff was disenrolled from OCS for "unsat character," with a recommendation that he not reapply. Id. at 357-58.

Immediately after his disenrollment from OCS, plaintiff was ordered to speak with a mental health professional. Id. at 291. Plaintiff complied, and during a five-to-ten minute conversation, informed the mental health professional of his adjustment disorder diagnosis and the underlying circumstances. Id. The mental health professional stated that he was not "worried about" plaintiff. Id.

On August 7, 2006, the commanding officer of the GWU NROTC Unit advised plaintiff that a Performance Review Board would be convened on August 17, 2006, to "evaluate [plaintiff's] suitability for commissioning." Id. at 418. The commanding officer further indicated that plaintiff had the right to, among other things, "appear before the board," and that attendance was "strongly recommended, but not mandatory." Id. And, the commanding officer explained that the board could recommend plaintiff's "[d]isenrollment from the NROTC Program." Id.

Captain Bradley W. Ward, the Marine Officer Instructor for the GWU NROTC Unit and plaintiff's advisor, sent a memorandum to the Performance Review Board regarding plaintiff on August 8, 2006. Id. at 420. Captain Ward noted that plaintiff had "displayed on several occasions some propensity for emotional instability," but that "the situations in question were always mitigated and [plaintiff] demonstrated exceptional aptitude and potential otherwise." Id. He further explained that plaintiff was "disenrolled from OCS without the possibility of reapplying" because "[t]he commanding officer of OCS deemed [plaintiff's] emotional stability as questionable and classified his performance as unsatisfactory based on his character." Id. Captain Ward recommended that plaintiff "be disenrolled from the [GWU] NROTC program without the additional penalty of reimbursement"; in other words, without having to repay the scholarship funds that he had already received. Id.

The administrative record contains conflicting information regarding whether the Performance Review Board actually convened.  On the one hand, Captain Ward sent plaintiff an electronic-mail message with the following statement:  "Although the paper work says there will be a formal board, we won't have one due to the [commanding officer of] OCS not allowing your return.  Your case is open and shut–nothing disputable about it."  Id. at 224.  On the other hand, the report issued by the board on August 17, 2006, indicates that the board convened, as previously scheduled, on August 17, 2006, and that plaintiff "was not present."  Id. at 421.

Regardless of whether the Performance Review Board actually convened, the three board members each signed the board's report.  Id. at 421-22.  In that report, the board indicated that plaintiff had "an above average academic record" and "no history of serious disciplinary problems," but that plaintiff had "displayed a susceptibility to emotional instability in the past." Id. at 422.  The board "concurred with" the assessment of plaintiff's "mental health" made by the commanding officer of OCS and found that plaintiff could not remain in the NROTC "due to his emotional instability."  Id.  It accordingly recommended that plaintiff "be disenrolled from the [GWU] NROTC program without the additional penalty of reimbursement."  Id.

The Performance Review Board forwarded its report to the commanding officer of the GWU NROTC Unit.  Id. at 421.  The commanding officer, in turn, prepared an NROTC Disenrollment Report bearing an effective date of October 5, 2006.  Id. at 408-09.  On this report, the commanding officer indicated that the basis of the disenrollment recommendation was "other" (and not "academic," "inaptitude/unsuitable," "disciplinary," "physical," "general," "special," "drop on request," or "death"), and that the reason for the disenrollment recommendation was "failure to complete OCS–not allowed to return."  Id. at 408.  Further, under the heading "evaluation of future acceptability for officer programs," the commanding officer checked the box next to "definitely not recommended."  Id. at 409.

On November 9, 2006, plaintiff completed the "student statement" section of the NROTC Disenrollment Report, writing:

> I joined NROTC as a college programmer, paying for three semesters before receiving a scholarship, of which only three semesters of tuition were paid. Upon returning home in May 2005 I was met with domestic abuse, both emotional and physical, which followed me back to college and persisted during school until December 2005.  These counts of abuse resulted in severe cases of depression and mental instability.  Yet, I was still fully committed to serving my country.  My [Marine Officer Instructor] and I agreed that I was fit for [OCS].  However, I was disenrolled from OCS by the [commanding officer] due to "mental health issues and instability," which resulted in my disenrollment from the [Reserve Officers Training Corps] program for failure to complete OCS.  I still want to serve my country, but I am unable due to lost mental stability, through no fault of my own, and thus my ability to serve my country. [sic]

Id.  Plaintiff further indicated that "if given the option," he would choose to repay the NROTC scholarship over active enlisted service "to resolve [his] indebtedness to the U.S. government for participation in the NROTC program," and acknowledged that his choice was "binding" and that he would "not be allowed to change at a later date."  Id.  Notwithstanding plaintiff's response to this query, plaintiff's actual preference was a waiver of the scholarship-repayment-or-active-enlisted-service requirement, as reflected on an undated NROTC Disenrollment Acknowledgment form.  See id. at 410-11.  Paragraph 5(a) of that form addressed waivers:

> I understand that[] the Secretary of the Navy may waive the requirement for active enlisted service and recoupment in exceptional cases.  Currently, the Secretary of the Navy will only consider waivers for medical, personal hardship, or academic issues brought on by extenuating circumstances.  However, there is no guarantee my waiver will be approved.  Any request for waiver must be fully justified in the student statement section of the disenrollment form.[4]

Id. at 411 (footnote added).  Plaintiff affirmatively requested a waiver to satisfy his obligation to the federal government.  Id.  Both plaintiff and Captain Ward signed the form.  Id.

On November 17, 2006, the commanding officer of the GWU NROTC Unit added the following remarks to the NROTC Disenrollment Report:

> SNM's disqualifying issues are unlikely to be resolved in the near or distant future.  In his own statement SNM admits to depression and mental [in]stability.  In short he does not have the ability to compartmentalize in such a manner that he could successfully function as a second lieutenant in the United States Marine Corps.  Recommend recoupment of tuition.

Id. at 409.  He then forwarded the report to the Naval Service Training Command.  Id. at 408.

The commander of the Naval Service Training Command concurred with the recommendation to disenroll plaintiff from the NROTC "for other reasons (failure to complete OCS–not allowed to return)."  Id. at 342.  The commander forwarded his endorsement–which erroneously indicated that plaintiff and the GWU NROTC Unit's commanding officer both "requested recoupment as [plaintiff's] payback option"–to the commanding general of the Marine Corps Recruiting Command on January 3, 2007.  Id.

The Marine Corps Recruiting Command, in turn, prepared a memorandum for the Secretary of the Navy on February 5, 2007, in which it recommended that plaintiff's appointment in the Marine Corps Reserve be terminated because plaintiff had been disenrolled from the NROTC "due to other reasons"–he "failed to complete [OCS] and was not recommended to

---

[4]  Plaintiff did not address his waiver request in the student statement on the NROTC Disenrollment Report.  See AR 409.

return."  Id. at 341.  The Marine Corps Recruiting Command further "recommend[ed] and
request[ed] permission to recoup NROTC scholarship funds in the amount of $50,675.00 for the
fulfillment of [plaintiff's] NROTC obligation."  Id.  The Secretary of the Navy's authorized
representative, the Assistant Secretary of the Navy (Manpower and Reserve Affairs), approved
the recommendations of the Marine Corps Recruiting Command without comment on February
16, 2007.  Id.

The Marine Corps Recruiting Command acted on the approved course of action on March
16, 2007.  Id. at 337-40, 349-51.  On that date, it prepared Appointment Termination and
NROTC Disenrollment Authorization forms reflecting that, effective February 16, 2007, plaintiff
was disenrolled from the NROTC for failing to complete OCS, and was indebted to the federal
government "for $50,675 of advanced educational assistance received in the form of NROTC
scholarship education."  Id. at 350-51.  Both forms were sent to the commanding officer of the
GWU NROTC Unit.  Id.

Also on March 16, 2007, the Marine Corps Recruiting Command sent a letter to the
Defense Finance and Accounting Service authorizing the recoupment of plaintiff's scholarship
from plaintiff, id. at 338, as well as a letter to the commanding general of the Marine Corps
Mobilization Command noting that recoupment of plaintiff's scholarship had been authorized, id.
at 339.  It also sent a letter to plaintiff, via the commanding officer of the GWU NROTC Unit,
indicating that plaintiff had been disenrolled from the NROTC and directed to reimburse the
federal government for the financial assistance that he had received.  Id. at 340.  Although
plaintiff learned of the Secretary of the Navy's disenrollment decision in April or May 2007, id.
at 292, he did not receive the letter from the Marine Corps Recruiting Command, or the rest of
the disenrollment package, until August 1, 2007, when he picked them up from the GWU
NROTC Unit office, id. at 373.

On May 31, 2007, the Defense Finance and Accounting Service sent plaintiff a letter
demanding payment of the $50,675 he received pursuant to the NROTC scholarship.  Id. at 253-
54.  Plaintiff began making monthly payments to satisfy this debt.  Am. Compl. ¶¶ 136-61.

Finally, in conjunction with his application to be admitted to the Colorado bar, plaintiff
underwent a psychological evaluation on October 2, 2012.  AR 257.  The examining psychologist
concluded that there was no "evidence to support a primary psychiatric diagnosis" and that
plaintiff was "psychologically fit to practice law."  Id.  Plaintiff was admitted to the Colorado bar
on October 29, 2012.  Am. Compl. ¶ 57.

## B. Procedural History

Plaintiff filed a complaint in this court on March 5, 2013, and, after defendant moved for
dismissal or for judgment on the administrative record, an amended complaint on July 1, 2013.
In his amended complaint, plaintiff contends that his disenrollments from OCS and the NROTC
were, for a variety of reasons, wrongful.  Id. ¶¶ 170-83.  He then sets forth five claims for relief.

Id. ¶¶ 184-234. In his first claim for relief, plaintiff contends that the Navy breached the scholarship agreement when it directed the recoupment of the scholarship payments it made to plaintiff. Id. ¶¶ 184-95. In his second claim for relief, plaintiff contends that the Navy breached the scholarship agreement by not providing three years of scholarship benefits to plaintiff. Id. ¶¶ 195-206. In his third claim for relief, plaintiff contends that the Navy breached the covenant of good faith with respect to the scholarship agreement by (1) not allowing plaintiff to demonstrate his suitability to earn a commission and (2) not complying with the relevant laws and regulations. Id. ¶¶ 207-15. In his fourth claim for relief, plaintiff contends that the Navy violated 10 U.S.C. § 2005 and 10 U.S.C. § 2107, along with their implementing regulations and policy memoranda, when it disenrolled him from the NROTC and deprived him of his scholarship. Id. ¶¶ 216-27. And, in his fifth claim for relief, plaintiff contends that the Navy violated 37 U.S.C. § 209 when it disenrolled him from the NROTC and deprived him of his subsistence allowance. Id. ¶¶ 228-34. Plaintiff requests damages in the amount of $71,290.04,[5] reimbursement for the interest that he incurred on his student loans for the semesters that should have been covered by the scholarship, interest on the payments that he made to the Defense Finance and Accounting Service, postjudgment interest, attorney's fees, and costs. Id. at 31.

Defendant moved to dismiss the amended complaint or, alternatively, for judgment on the administrative record. After plaintiff filed his response to defendant's motion, the parties attempted to resolve plaintiff's claims without further litigation. After those discussions did not result in a settlement, defendant filed a motion for remand, requesting that the court remand the case to the Board for Correction of Naval Records ("BCNR"). Over plaintiff's objections, the judge originally assigned to this case granted, in part, defendant's motion, and remanded the case to the BCNR with the following directions:

    1. [T]he BCNR shall afford Mr. Kennedy the opportunity to present in writing a response to the Navy's recommendation to disenroll him from the GWU NROTC Scholarship Program and, if disenrollment should occur, whether reimbursement of scholarship tuition is appropriate.

    2. The BCNR may seek any advisory opinion that it deems necessary in order to issue its decision in this matter.

---

    [5] This amount includes the payments that plaintiff made to the Defense Finance and Accounting Service ($15,880.04), Am. Compl. ¶¶ 136-61; tuition, fees, and allowance for the fall 2004 semester ($15,820.00), id. ¶¶ 162-63; tuition, fees, and allowance for the 2006-2007 academic year ($34,590.00), id. ¶¶ 164-65; and ten months of subsistence allowance for the 2006-2007 academic year ($5000.00), id. ¶ 167.

3.  [T]he BCNR shall afford Mr. Kennedy any relief it determines that he is entitled to receive and shall issue a decision explaining in detail the rationale, law and evidence that supports its final decision.

Order, Jan. 23, 2014, at 1-2.

Pursuant to the court's order, plaintiff submitted an application for the correction of his military records to the BCNR.  AR 139-1191.  In that application, plaintiff requested that his military records be corrected to reflect that:  (1) he was disenrolled from OCS and not permitted to reapply to OCS due to "a health-related incapacity" and not due to "unsatisfactory character"; (2) he was disenrolled from OCS and not permitted to reapply to OCS because of an erroneous assessment that his condition was "permanent or not reparable"; (3) he was retained in OCS and/or able to reapply to OCS; (4) a Performance Review Board was not convened and he was "denied his administrative due process rights with respect to a Performance Review Board"; (5) he "was not prohibited from reapplying to" OCS; (6) his disenrollment from the NROTC for failing to complete OCS was not mandatory under naval regulations; (7) he did not voluntarily elect disenrollment or reimbursement of his scholarship benefits, but instead requested a waiver of his obligation to the federal government; (8) he was disenrolled from the NROTC and directed to reimburse his scholarship benefits due to a "health-related incapacity" erroneously deemed as "permanent or irreparable"; (9) he was disenrolled from the NROTC and directed to reimburse his scholarship benefits without being afforded the medical evaluation required by naval regulations; (10) he was disenrolled from the NROTC "without factual investigation and thorough consideration," as required by naval regulations; (11) he was retained in the NROTC until his graduation from GWU in May 2007, "at which point he was not offered a commission and his enlistment was terminated by the Secretary of the Navy"; (12) he "is not obligated to reimburse his scholarship benefits"; and (13) he "is contractually entitled to the balance of his scholarship benefits for the full three year term, including those benefits that the United States has not yet disburse[d] to him or on his behalf."  Id. at 141-44.  Plaintiff provided a comprehensive rationale for each requested correction, id. at 145-65, as well as numerous supporting documents, id. at 174-1191.

Upon receipt of plaintiff's application, the BCNR forwarded it to the Naval Service Training Command with a request for an advisory opinion.  Id. at 137-38.  The Naval Service Training Command issued its advisory opinion approximately three months later, addressing the following questions:  (1) "Was [plaintiff's] disenrollment from NROTC arbitrary and capricious, and did it violate his rights to due process?" and (2) "Did [plaintiff's] disenrollment and obligation to repay his scholarship monies constitute an unreasonable punishment and exceed the interests of justice?"  Id. at 133-36.  Ultimately, it answered all of these questions in the negative. Id.  A copy of the advisory opinion was provided to plaintiff, and plaintiff submitted a comprehensive response to the opinion to the BCNR.  Id. at 103-31.

The BCNR issued its decision on October 15, 2014.  Id. at 5-13.  It summarized plaintiff's request in the following manner:

[Petitioner requests], in effect, that the applicable naval record be corrected to show that he was erroneously discharged from [OCS] and the [GWU NROTC] due to a failure to consider all facts related to his case, and denial of due process rights.  He is seeking changes to his military record to reflect that his disenrollments were made in error, a waiver of reimbursement to the government for the educational costs incurred from his disenrollment from GWU NROTC, and payment of educational benefits lost as a result of the erroneous disenrollment.

Id. at 5-6.  The BCNR discussed each of the record corrections requested by plaintiff.  Id. at 7-11.  It rejected some of the requested corrections; of particular note are the following findings:

[Petitioner requests that the BCNR] remove or delete any document at GWU NROTC that his disenrollment was mandatory due to his non-completion of OCS.  The Board recommends denial.  [It] cite[s] Department of Defense Instruction ("DoDI") 1215.08, Senior Reserve Officers' Training Corps (ROTC) Programs (Jun. 26, 2006)], paragraph 6.3.4.1.2, which states that a member will ". . . reimburse the United States . . . for educational costs it has expended on the student's behalf . . . at the discretion of the Secretary of the Military Department concerned, if that student fails to complete the education requirements specified in the agreement or fails to fulfill any term or condition prescribed by the Secretary of the Military Department concerned" . . . .  Additionally, Petitioner's enlistment contract for the NROTC Scholarship required completion of all military education[] (10 U.S.C. Section 2005(a)).  Therefore, the Board noted that his failure to complete his military education (OCS), and that it was not waivable for Marine Corps Scholarship recipients, authorized his disenrollment from the GWU NROTC Unit, [Chief of Naval Education and Training Instruction ("CNETINST") 1533.12G, Regulations for the Administration and Management of the Naval Reserve Officers Training Corps (NROTC) (Aug. 9, 2002)].  Per [CNETINST 1533.12G], NROTC . . . Marine Corps Option students are required to complete "Bulldog" training (equivalent of OCS) at the Marine Corps Combat Development Command[] in Quantico, Virginia.  Although Petitioner argues that the definition of the term 'education' in [Department of Defense Directive ("DoDD") 1215.8, Senior Reserve Officers Training Corps (ROTC) Programs (Mar. 25, 1994)] is limited to college courses, the Board noted his scholarship agreement . . . clearly states []he "will satisfactorily complete the NROTC curriculum and military requirements as required", and the document makes it equally clear that these [requirements] are separate from, and in addition to, pursuit of his [baccalaureate] degree.

. . . .  The Board also cite[s] CNETINST 1533.12G . . . in determining that . . . his disenrollment was . . . proper.  Disenrollment from the NROTC program is recommended for "any NROTC student who has demonstrated a lack of officer

aptitude as to make further retention unjustified." The [commanding officer] of the NROTC unit was justified in disenrolling Petitioner based on Petitioner's failure to complete the required OCS training and the declaration that he [was] not invited to return. Therefore, . . . it does not recommend any monetary relief beyond a waiver of the debt to the United States, since Petitioner did not fulfill the terms or conditions prescribed in his scholarship agreement.

[Petitioner requests that the BCNR] amend his naval record to reflect he was wrongfully disenrolled from the GWU NROTC Unit, due to not being given a medical evaluation[, and t]hat he was retained in the GWU NROTC Unit through his graduation in May 2007, at which point he was not offered a commission and his enlistment was terminated by the Secretary of the Navy. The Board recommends denial. [It] note[s] that Petitioner was disenrolled from GWU NROTC on 16 February 2006. The Board also notes that there was sufficient evidence to show that he had displayed emotional instability on multiple occasions, which the Petitioner himself does not deny. The Board reasons that regardless of whether or not the condition was permanent or temporary, it was within the authority of the [commanding officer] of the GWU NROTC Unit to make the recommendation to disenroll him from the program[] under . . . CNETINST 1533.12G . . . , and that the Secretary of the Navy made the final determination to disenroll him from the NROTC program.

. . . .

[Petitioner requests that the BCNR] amend his record to reflect that he is contractually entitled to the balance of his scholarship benefits for the full three year term, including those benefits that the United States has yet to disburse to him or on his behalf. The Board recommends denial. The Board notes that . . . Petitioner's NROTC Scholarship Service Agreement, paragraph (I)(B)(2) and (3), states, "(2) I will satisfactorily complete the NROTC curriculum and military requirements as required["]; and "(3) Upon completion of all requirements, and at the discretion of the Secretary of the Navy, I will accept, if offered . . . a commission . . .", . . . . The Board concludes that he did not complete all of the military requirements and therefore, is not entitled to the balance of his remaining three semesters' worth of tuition.

Id. at 9-11. However, it did make the following findings in plaintiff's favor:

[Petitioner requests that the BCNR] amend his official record to represent, in effect, that he was denied his fundamental rights of administrative due process as guaranteed by Naval regulation, which include the right to notice, to be heard, to appear before the [Performance Review Board], to submit a written statement, and to present documents or witnesses on his behalf. The Board believes that

-12-

Petitioner presented sufficient information to show that his due process rights were violated at the [Performance Review Board] and[,] therefore, recommends approval to correct his record to show that he will not be required to pay for his educational debt in the amount of $50,675.00 for his three semesters at GWU NROTC.

         . . . .

         [Petitioner requests that the BCNR] correct his naval record to show that he did not voluntarily elect to be disenrolled from the GWU NROTC Unit or that he voluntarily elected to reimburse his scholarship benefits.  In fact, Petitioner states he requested a waiver for his educational debt, and a waiver of any military obligation.  On this issue, the Board recommends partial relief.  The Board notes that due to the violation of Petitioner's due process rights with regard to the [Performance Review Board], and the fact that he did not voluntarily elect to be disenrolled from the GWU NROTC, the Board recommends his educational debt be waived.  . . .

         . . . .

         [Petitioner requests that the BCNR] amend his record to reflect that he is not obligated to reimburse the United States Government for his GWU NROTC scholarship benefits.  The Board recommends approval.  Pursuant to [Deputy Secretary of Defense, Memorandum for Secretaries of the Military Departments et al., Repayment of Unearned Portions of Bonuses, Special Pay, and Educational Benefits or Stipends (Apr. 8, 2005) ("April 2005 Memorandum")], and titles 10 and 37, U.S.C., . . . "If the conditions for the pay or benefit are not fulfilled, and the individual is subject to statutory repayment provisions, the individual shall be required to repay the United States the percentage of the pay or benefit representing the unexpired part of the service for which the pay or benefit was provided[. . . . Exceptions] may be granted if repayment would be contrary to personnel policy or management objective, would be against equity and good conscious or would be contrary to the best interest of the United States".  Since Petitioner's [Performance Review Board] due process rights were violated, the Board believed that recoupment of educational expenses would be against equity and good conscience and payment should thus be waived.

Id. at 8-11.  Accordingly, the BCNR concluded:

         Upon review and consideration of all the evidence of record, and despite the unfavorable advisory opinion, the Board concludes that Petitioner's request warrants partial favorable action.  The Board believes that Petitioner presented sufficient evidence, including his response to the unfavorable [advisory opinion]

-13-

. . . , to show that he should not be required to pay back his three [semesters']
worth of educational expenses while enrolled in the GWU NROTC Unit.

> However, the Board does not find that the Petitioner provided sufficient
> evidence to show that his disenrollment was unjustified or that he should be
> entitled to the remaining three semesters' worth of educational expenses in which
> he did not attend or was . . . in anyway involved with the NROTC Unit at GWU.
> The Board also found the [Petitioner's] request to correct his record to remove
> references to his OCS disenrollment, or change the narrative reasons for
> [disenrollment] from the NROTC program, were unsupported by the evidence.

> Therefore, the Board believes that the interests of justice would be better
> served if Petitioner was granted a partial approval for a waiver of his educational
> costs for three [semesters] at the GWU NROTC Unit as this action will correct the
> error in the due process Petitioner should [have] been afforded regarding his
> [Performance Review Board].

Id. at 12.  It therefore recommended:

> That Petitioner's naval record be corrected, where appropriate, to show that:

> a.  The February 16, 2007 approval by Assistant Secretary of the Navy
> (Manpower and Reserve Affairs) of the Marine Corps Recruiting Command
> memorandum recommending [disenrollment] of the Petitioner be amended to
> state, "Approved with the exception of the recoupment of advanced educational
> funds totaling approximately $50,675.00 be waived."

> b.  [Defense Finance and Accounting Service] will ensure Petitioner is
> reimbursed for those payments he has already made to satisfy the original
> recoupment demand.

Id.  The Assistant Secretary of the Navy (Manpower and Reserve Affairs) approved the BCNR's
recommendation on November 10, 2014.[6]  Id. at 13.

Although plaintiff received some of the relief that he requested from the BCNR, he was
not satisfied.  Accordingly, he chose to proceed with his claims before this court, and filed a

---

[6]  The Assistant Secretary of the Navy (Manpower and Reserve Affairs) is authorized to
act on behalf of the Secretary of the Navy, see Secretary of the Navy Instruction 5420.193, Board
for Correction of Naval Records ¶ 3(b) (Nov. 19, 1997), who, in the circumstances presented in
this case, was required to review the BCNR's decision, see 32 C.F.R. § 723.6(e)(2)(ii) (2006).
For simplicity, the court will refer to the Secretary of the Navy's approval of the BCNR's
recommendations on plaintiff's application as, more concisely, the BCNR's decision.

motion for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the
United States Court of Federal Claims ("RCFC").  Defendant then moved to dismiss the
amended complaint pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), or, alternatively, for
judgment on the administrative record pursuant to RCFC 52.1(c).  The motions have been fully
briefed.  The court deems oral argument unnecessary.

## II.  DEFENDANT'S MOTION TO DISMISS

### A.  Standard of Review

Defendant first moves to dismiss plaintiff's amended complaint pursuant to RCFC
12(b)(1) for lack of jurisdiction and pursuant to RCFC 12(b)(6) for failure to state a claim upon
which the court could grant relief.  In ruling on a motion to dismiss, the court assumes that the
allegations in the complaint are true and construes those allegations in the plaintiff's favor.
Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  With respect to RCFC 12(b)(1)
motions, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the
court possesses subject matter jurisdiction.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S.
178, 189 (1936); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).
Although complaints filed by plaintiffs proceeding pro se are held to "less stringent standards
than formal pleadings drafted by lawyers,"[7] Haines v. Kerner, 404 U.S. 519, 520-21 (1972), a
plaintiff proceeding pro se is not excused from meeting basic jurisdictional requirements, Henke,
60 F.3d at 799.  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC
12(h)(3) requires the court to dismiss that claim.

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC
12(b)(6) if it does not provide a basis for the court to grant relief.  Lindsay v. United States, 295
F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon
which relief can be granted is appropriate when the facts asserted by the claimant do not entitle
him to a legal remedy.").  To survive a motion to dismiss under RCFC 12(b)(6), a plaintiff must
include in the complaint "enough facts to state a claim to relief that is plausible on its face."  Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In other words, a plaintiff must "plead[]
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp.,
550 U.S. at 556).  "[O]nce a claim has been stated adequately, it may be supported by showing
any set of facts consistent with the allegations in the complaint."  Bell Atl. Corp., 550 U.S. at

---

[7]  As noted above, plaintiff is a licensed attorney.  He therefore is not a typical pro se
litigant.  Nevertheless, the court recognizes that "[e]ven a skilled lawyer who represents himself
is at a disadvantage in contested litigation" because "[h]e is deprived of the judgment of an
independent third party in framing the theory of the case, evaluating alternative methods of
presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in
making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen
developments in the courtroom."  Kay v. Ehrler, 499 U.S. 432, 437 (1991).

563. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

## B. Subject Matter Jurisdiction

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). In addition, to fall within the court's jurisdiction, any claim against the United States filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim).

## C. The Court Lacks Jurisdiction to Entertain Plaintiff's Breach-of-Contract Claims

The first three claims for relief asserted by plaintiff in his amended complaint are claims that the Navy breached the scholarship agreement appended to the enlistment agreement that plaintiff executed on March 16, 2005. Defendant argues that the court lacks jurisdiction over these breach-of-contract claims because plaintiff's pay is set by statute and regulation, and not by his enlistment agreement. Defendant is correct.

As noted above, plaintiff challenges his disenrollment from the NROTC. Because his disenrollment from the NROTC resulted in his discharge from the Marine Corps Reserve and the loss of his scholarship and subsistence allowance, plaintiff's allegations constitute a claim for wrongful discharge. See Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) ("[T]o bring a military discharge case in the Court of Federal Claims, a plaintiff . . . must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the

pay that the plaintiff would have received but for the unlawful discharge."). However, the court cannot entertain plaintiff's wrongful discharge claim unless there is a money-mandating source of law that entitles him to the scholarship and subsistence allowance. Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Plaintiff contends that the scholarship agreement is such a money-mandating source of law. He is mistaken.

It is well settled that "statutes are the exclusive source of law governing the compensation rights of members of the military . . . ." Schism v. United States, 316 F.3d 1259, 1272 (Fed. Cir. 2002) (en banc); accord Bell v. United States, 366 U.S. 393, 401 (1961) ("A soldier's entitlement to pay is dependent upon a statutory right."). Moreover, "common-law rules governing private contracts have no place in the area of military pay." Bell, 366 U.S. at 401; accord United States v. Larionoff, 431 U.S. 864, 869 (1977) (remarking that a service member's right to a variable reenlistment bonus "must be determined by reference to the statutes and regulations governing the [bonus], rather than to ordinary contract principles"). And, although "[e]nlistment is a contract, . . . it is one of those contracts which changes the status, and where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes." United States v. Grimley, 137 U.S. 147, 151-52 (1890), quoted in Bell, 366 U.S. at 402.

The scholarship agreement upon which plaintiff relies is not, as plaintiff alleges, an independently enforceable contract. Rather, the scholarship agreement is merely an addendum to plaintiff's enlistment agreement, as evidenced by its designation as an "annex" to the enlistment agreement.[8] Accordingly, plaintiff's contention that the Navy breached the scholarship agreement is actually a contention that the Navy breached the enlistment agreement. However, as explained above, an enlistment agreement cannot constitute the money-mandating source of law in a military pay case. Therefore, the court must dismiss plaintiff's breach-of-contract claims for lack of subject matter jurisdiction.

The decision of the United States Supreme Court ("Supreme Court") in Lynch v. United States, 292 U.S. 571 (1934), relied upon by plaintiff, does not compel a different result. The plaintiffs in Lynch were beneficiaries of war risk insurance polices who sought compensation under those policies due to the total and permanent disability of the insured individuals. Id. at 574-75. The Supreme Court recognized that the insurance policies, issued pursuant to the War Risk Insurance Act of 1917, were "contracts of the United States," id. at 576, and were distinguishable from other benefits accorded to service members:

> War risk insurance, while resembling in benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to former members of the Army and Navy or their dependents, differs from them

---

[8] In addition, there are no signatures on the scholarship agreement. However, as explained above, see supra note 3, it is possible that the administrative record does not contain a complete copy of the scholarship agreement.

> fundamentally in legal incidents.  Pensions, compensation allowances, and privileges are gratuities.  They involve no agreement of parties; and the grant of them creates no vested right.  The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.  On the other hand, war risk policies, being contracts, are property and create vested rights.  The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder.

Id. at 576-77 (citations omitted).  The Supreme Court therefore concluded that the war risk insurance policies were enforceable contracts.  Id.

According to plaintiff, Lynch stands for the proposition that if a statute authorizes the federal government to contract with service members and the contracts are "in harmony with the statutory authorization," then the contracts are "judicially enforceable."  Pl.'s Mot. 13.  Plaintiff's interpretation is untenable.  As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained in Schism,

> The authority for the [war risk insurance] program was set forth in congressional action separate from the government's role as the commanding power of the armed forces ("[w]ar risk insurance was devised in the hope that it would, in large measure, avoid the necessity of granting pensions").  It was only because of this difference that the war-risk insurance contracts created vested rights, whereas pensions and hospital privileges were mere statutory gratuities, not vested contract rights, so Congress could revoke or expand them at any time.  . . .  In Bell . . . the rule that the enlistment contract gives rise to a relationship not governed by contract or that the contract somehow merges with the applicable statutes is stated generally and fits with the Lynch concept that compensation of soldiers is different from other contracts in which a soldier and the government happen to be contracting parties, but their roles as contracting parties are not relevant to the enlistment or military service context.

316 F.3d at 1272-73 (citations omitted); see also id. at 1274 ("[W]here Congress has legislated military pay or benefits, a service secretary cannot contract (even if it may be true that in the absence of congressional action, and with congressional authority, a secretary could have contracted with respect to the pay or benefits).").  In other words, a contract between the federal government and a service member is judicially enforceable only if the reason for the contract has no bearing on the service member's enlistment or military service.

In this case, plaintiff's NROTC scholarship was expressly tied to his enlistment in the Marine Corps Reserve; plaintiff could not have obtained the scholarship unless he enlisted.  In fact, the same statute that authorized plaintiff's NROTC scholarship required, as a condition to obtaining a scholarship, enlistment in the reserve component of the relevant military service.  See 10 U.S.C. § 2107(b)(2)-(3) (2000 & Supp. IV 2005).  There can be no legitimate dispute that the

scholarship agreement appended to plaintiff's enlistment agreement was directly relevant to plaintiff's enlistment in the Marine Corps Reserve.  Accordingly, the Supreme Court's decision in Lynch does not assist plaintiff.  Plaintiff's entitlement to the NROTC scholarship was governed by statute, not contract.

**D.  Plaintiff's Fourth and Fifth Claims for Relief Are Based on Money-Mandating Statutes**

In the two remaining claims for relief set forth in the amended complaint, plaintiff alleges that the Navy violated 10 U.S.C. § 2005, 10 U.S.C. § 2107, and 37 U.S.C. § 209, as well as those statutes' implementing regulations and policy memoranda,[9] when it disenrolled plaintiff from the NROTC, depriving him of his scholarship and subsistence allowance.  Plaintiff further alleges that all three statutes and their implementing regulations and policy memoranda are money-mandating sources of law.

It is well accepted that "a statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'"  Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (panel portion) (quoting United States v. Mitchell, 463 U.S. 206, 219 (1983)).  Under this rule, "[i]t is enough . . . that a statute [or regulation] creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages.  While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do."  United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003) (citation omitted).

The two statutes under which plaintiff claims entitlement "to the financial assistance that he would have received but for his wrongful disenrollment" from the NROTC are 10 U.S.C. § 2005 and 10 U.S.C. § 2107.  Under § 2107, the Secretary of the Navy is authorized to provide financial assistance–"including tuition, fees, books, and laboratory expenses"–to any eligible student in the NROTC.  10 U.S.C. § 2107(a), (c)(1).  To be eligible to receive such financial assistance, a student must, among other qualifications, "be specially selected for the financial assistance program"; "enlist in the reserve component" of the relevant military service; "contract . . . to serve for the period required by the program"; and "agree in writing . . . to accept an appointment, if offered, as a commissioned officer" in the relevant military service.  Id. § 2107(b).  Under § 2005, the written agreement described in § 2107(b) must provide that if the student does not complete the specified period of active duty or does not fulfill any of the terms or conditions prescribed by the Secretary of the Navy, the student must reimburse the Navy for the financial assistance he received.  Id. § 2005(a)(3), (f)(1) (2000).  Accordingly, under 10 U.S.C. § 2005 and 10 U.S.C. § 2107, once the Secretary of the Navy provides financial assistance to an eligible student in the NROTC, the student is entitled to that financial assistance

---

[9] These regulations and policy memoranda include:  DoDD 1215.8; Office of the Under Secretary of Defense, Memorandum for Assistant Secretary of the Army (M&RA) et al., Repayment of Unearned Portions of Bonuses, Special Pay, and Educational Benefits or Stipends (May 21, 2008); and the April 2005 Memorandum.  See Am. Compl. ¶¶ 220-22.

unless and until that entitlement is lawfully terminated due to the student's failure to fulfill the terms of the scholarship agreement.  There is, consequently, a money-mandating basis for plaintiff's claim for the scholarship benefits that he would have received had he not been disenrolled from the NROTC.[10]

Moreover, there can be no dispute that plaintiff's claim for subsistence allowance is based on a money-mandating statute:  The statute upon which plaintiff relies, 37 U.S.C. § 209(b), provides that a member of the Reserve Officers Training Corps appointed to a position in the reserve component of the pertinent military service under 10 U.S.C. § 2107 "is entitled to a monthly subsistence allowance . . . ."  In short, plaintiff's fourth and fifth claims for relief are based on money-mandating statutes.

### E.  Some of Plaintiff's Claims Are Barred by the Statute of Limitations

In addition to establishing that each of his claims is based on a money-mandating source of law, plaintiff must demonstrate that his claims were timely filed.  As noted above, to fall within the court's jurisdiction, a claim against the United States must be "filed within six years after such claim first accrues."  28 U.S.C. § 2501.  "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"  Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).  Consequently, a claim for monetary benefits by an individual alleging an improper discharge from the military accrues on the date of discharge.  See id. at 1303-04; Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

In his amended complaint, plaintiff alleges that the suspension of his scholarship and subsistence allowance in August 2007 was wrongful, and that he is entitled to the scholarship benefits and subsistence allowance that he would have received had he not been disenrolled from the NROTC.  In contrast, in his motion for judgment on the administrative record, plaintiff divides his monetary claim into three parts.  First, plaintiff contends that there was no legal basis for the Navy to withhold payment of his scholarship for the fall 2004 semester.  Second, plaintiff contends that there was no legal basis for the Navy to withhold payment of his scholarship and subsistence allowance for the 2006-2007 academic year in August 2006, prior to his disenrollment from the NROTC.  Third, plaintiff contends that it was improper for the Navy to

---

[10]  Defendant concedes that 10 U.S.C. § 2107 is a money-mandating statute.  See Def.'s Mot. 32 ("Rather, 10 U.S.C. § 2107 . . . only became mandating for [plaintiff] upon his acceptance into the scholarship program in March of 2005."), 35 ("[Section 2107] ceased mandating money for [plaintiff] when he became no longer eligible for commissioning in the Marines following his failure to complete OCS."); Def.'s Reply 19 ("[Plaintiff] is a Scholarship Program participant under 10 U.S.C. § 2107, the applicable money-mandating statute.").

disenroll him from the NROTC and demand repayment of the scholarship benefits that he received for the spring 2005 semester and the 2005-2006 academic year.

Defendant asserts that plaintiff's claims that the Navy wrongfully withheld his scholarship for the fall 2004 semester and his scholarship and subsistence allowance for the 2006-2007 academic year are not dependent upon plaintiff's allegation that he was wrongfully disenrolled from the NROTC; in other words, plaintiff asserts entitlement to those funds notwithstanding his subsequent disenrollment from the NROTC. Thus, defendant argues, all of the events that were necessary for plaintiff to bring suit to recover those funds occurred prior to plaintiff's disenrollment from the NROTC. Defendant specifically contends that plaintiff's claim for scholarship benefits for the fall 2004 semester accrued in March 2005, when plaintiff executed the enlistment agreement but did not receive a payment for the previous semester, and that plaintiff's claim for scholarship benefits and subsistence allowance for the 2006-2007 academic year accrued in August 2006, when plaintiff stopped receiving payments upon his disenrollment from OCS. Defendant concludes that because plaintiff filed his original complaint in March 2013, both accrual dates fall beyond the applicable six-year limitations period.

Defendant's analysis is correct; plaintiff's claims for monetary relief that predate, and are unrelated to, his disenrollment from the NROTC accrued when the Navy withheld or suspended the scholarship benefits and subsistence allowance at issue, and not when plaintiff was disenrolled from the NROTC. Because plaintiff filed suit more than six years after these claims accrued, the court lacks jurisdiction to entertain them. However, in his fourth and fifth claims for relief, plaintiff advances a separate and distinct theory for recovering the scholarship for the fall 2004 semester and the scholarship and subsistence allowance for the 2006-2007 academic year: that he would have received those funds but for his wrongful disenrollment from the NROTC. Those claims accrued upon plaintiff's disenrollment from the NROTC and therefore are not barred by the statute of limitations.

### F.  A Portion of Plaintiff's Fourth Claim for Relief Is Moot

The next argument advanced by defendant in its motion to dismiss is that plaintiff's claim that he was wrongfully disenrolled from the NROTC and required to reimburse the federal government for the scholarship benefits that he received is moot because the BCNR has already afforded plaintiff relief on that claim. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). When a case is moot, there are no justiciable issues upon which the court can render a decision.[11]  Flast v. Cohen, 392 U.S. 83, 95 (1968); see also Fisher, 402 F.3d at

_____

[11]  The "lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964); see also U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . [and] to Controversies to which the

1176 (noting that justiciability "encompasses a number of doctrines under which courts will decline to hear and decide a cause," including the "doctrines of standing, mootness, ripeness, and political question").  In other words, a court "will determine only actual matters in controversy essential to the decision of the particular case before it."  United States v. Alaska S.S. Co., 253 U.S. 113, 115 (1920).  The controversy must exist at all stages of the litigation; it is not enough that the controversy was alive when the complaint was filed.  Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974).  A party's subsequent acts will render a case moot if those acts make it impossible for the court to grant "'effectual relief.'"  Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).  However, because the "[m]ootness of an action relates to the basic dispute between the parties" and "not merely the relief requested," a case will not be rendered moot by subsequent acts if some of the requested relief remains available.  Intrepid v. Pollock, 907 F.2d 1125, 1131 (Fed. Cir. 1990); accord Church of Scientology of Cal., 506 U.S. at 12 (holding that a case is not moot so long as the "court can fashion some form of meaningful relief" for the injured party).

In his application to the BCNR for the correction of his military records, plaintiff contended that he was wrongfully disenrolled from the NROTC and therefore entitled to the entire three-year scholarship that he was awarded upon his enlistment in the Marine Corps Reserve.  The BCNR concluded that plaintiff was denied his rights of due process by the Performance Review Board, and therefore recommended that plaintiff's records be corrected to reflect that plaintiff was not required to reimburse the federal government for the scholarship

---

United States shall be a Party . . . .").  But see Honig v. Doe, 484 U.S. 305, 329-32 (1988) (Rehnquist, C.J., concurring) (questioning the constitutional origins of the mootness doctrine by arguing that despite federal courts' recognition of exceptions to mootness, such exceptions cannot be read into Article III's "case or controversy" requirement); Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1209 (10th Cir. 2012) ("Mootness has many moods. . . .  In some cases mootness bears a constitutional countenance, acting as a jurisdictional bar against even entertaining a case.  Other times mootness carries a more prudential complexion, permitting us to withhold relief we have the authority to grant.  Other times still, a case finds itself mooted by a tangle of constitutional and prudential considerations. . . .  Whether, when, and to what degree mootness can boast of being a constitutional command, a true jurisdictional limit on the federal courts, has taxed great minds."); Matthew I. Hall, The Partially Prudential Doctrine of Mootness, 77 Geo. Wash. L. Rev. 562, 575 (2009) (arguing "that if the mootness bar were truly a mandatory, jurisdictional rule imposed by the Constitution, then the exceptions . . . could not exist").  The Court of Federal Claims, as a court established under Article I of the United States Constitution, 28 U.S.C. § 171(a) (2012), is not bound by the "case or controversy" requirement of Article III, Zevalkink v. Brown, 102 F.3d 1236, 1243 (Fed. Cir. 1996).  Nevertheless, the Court of Federal Claims and other Article I courts traditionally have applied the "case or controversy" justiciability doctrines.  See id.; Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 558 (2000); cf. 28 U.S.C. § 2519 (using the phrase "case or controversy" in describing the finality of judgments of the Court of Federal Claims).

benefits that he received, and that the Defense Finance and Accounting Service be directed to return the payments that plaintiff had already made to satisfy his debt.  The BCNR further concluded that there was insufficient evidence to establish that plaintiff's disenrollment was improper, and therefore recommended against plaintiff receiving the balance of the three-year scholarship.  The Secretary of the Navy approved the BCNR's recommendations; that approval constituted a final decision on plaintiff's claims.

The BCNR afforded plaintiff some of the relief that he presently requests; he is no longer required to repay the scholarship benefits that he received from the Navy, and the amount that he did repay will be returned to him.  Accordingly, the portion of plaintiff's fourth claim for relief that concerns plaintiff's scholarship benefits for the spring 2005 semester and the 2005-2006 academic year is moot and will be dismissed.  However, the BCNR did not provide plaintiff with all of the relief that he requested; plaintiff's disenrollment from the NROTC was not found to be wrongful and plaintiff was not awarded scholarship benefits for the fall 2004 semester or the 2006-2007 academic year.  Because plaintiff requests, in his amended complaint, a finding that his disenrollment from the NROTC was wrongful and an award of the balance of the three-year scholarship, and because that relief is within the court's authority to grant, see 28 U.S.C. § 1491(a), the remainder of plaintiff's fourth claim for relief is not moot.

## G. Some of Plaintiff's Claims Are Not Justiciable

The final argument that defendant raises in its motion to dismiss is that plaintiff's allegations that he was improperly disenrolled from OCS and the NROTC due to his mental health issues are not justiciable.  Specifically, defendant argues that plaintiff's fitness for participation in OCS and, therefore, the NROTC, was a matter within the exclusive purview of the Navy, and therefore cannot be reviewed by this court.

As noted by defendant, it is well settled that the determination of a service member's fitness to serve is within the province of the military and is entitled to deference.  See Fisher, 402 F.3d at 1176-77 ("When the question is one of physical or mental fitness for service in the military, courts are loath to interfere with decisions made by the President and his designated agents."); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."  (footnote omitted)); Wales v. United States, 130 F. Supp. 900, 903 (Ct. Cl. 1955) (en banc) ("This court cannot undertake to determine who is fit or unfit to serve in the military forces.").  However, the deference afforded the military's decisions regarding fitness to serve is not absolute.  "[A]lthough the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy."  Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995); see also Fisher, 402 F.3d at 1177 ("When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will

-23-

intervene, though only to ensure that the decision is made in the proper manner."). In other words, a court is permitted to review whether a fitness determination was made in violation of statute, regulation, or procedure. See Roth, 378 F.3d at 1385 ("[I]n cases in which procedural violations are alleged, 'the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations.' To engage in such an inquiry does not intrude upon any discretion reserved exclusively for the military; rather, the inquiry merely ascertains whether applicable military procedures, statutory or regulatory, were followed." (citation omitted) (quoting Adkins, 68 F.3d at 1323)); Holley, 124 F.3d at 1468 ("Our concern . . . is not for the correctness of the Army's decision to separate [the plaintiff] based on his infractions; our concern is solely whether the decision to do so without a full hearing before a board of inquiry violated any statute, regulation, or the fundamental due process that the Constitution provides to all persons. The issue of discharge procedure is not one of achieving legitimate military ends, but a matter of compliance with law. Review of compliance with statute, regulation, and the Constitution is the judicial responsibility." (citations omitted)). In short, a court's ability to review a fitness determination is limited to ensuring that the determination was made in accordance with law. Thus, contrary to plaintiff's contentions, a court cannot review the merits of a decision regarding who should serve in the military, even under a substantial evidence standard. Compare Fisher, 402 F.3d at 1180 (noting that "the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay" and that "this review is conducted under a deferential standard of review, essentially the standard under which administrative agency decisions are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law" (emphasis added)), with id. at 1180-83 (explaining that "more recent precedents have articulated a standard of judicial review of military service decisions broadly indicating that courts will not address the merits of such decisions," particularly decisions pertaining to "who should be allowed to serve on active duty, and in what capacity").

Thus, plaintiff's challenge to the merits of the Navy's decision to disenroll him from OCS and the NROTC are not justiciable. The disenrollment decisions, which pertained to who should be permitted to serve in the Marine Corps, were solely within the province of the Navy. However, plaintiff also contends that the Navy's decision to disenroll him from the NROTC was contrary to statute, regulation, and procedure. The court has the authority to review such a contention. Accordingly, plaintiff's remaining claims–that he is entitled to scholarship benefits for the fall 2004 semester and the 2006-2007 academic year, as well as the subsistence allowance, that he would have received but for his wrongful disenrollment from the NROTC–survive defendant's motion to dismiss.

## III. THE PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Having granted in part and denied in part defendant's motion to dismiss, the court turns to the parties' cross-motions for judgment on the administrative record, filed pursuant to RCFC

52.1(c).  In ruling on such motions, the court must decide whether the moving party is entitled to judgment based on the evidence in the administrative record.  See Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005) ("[J]udgment on the administrative record is properly understood as intending to provide for an expedited trial on the administrative record.").

## A.  The Procedural Posture of Plaintiff's Claims

Before it can address the merits of plaintiff's surviving claims, the court must discuss their unique procedural posture.  After plaintiff filed his amended complaint, defendant filed a combined motion to dismiss and motion for judgment on the administrative record.  Plaintiff responded in opposition to the combined motion, and defendant, after unsuccessful settlement discussions, filed a motion to remand the case to the BCNR.  Over plaintiff's objections, the court granted defendant's motion.  Plaintiff subsequently filed an application for the correction of his military records with the BCNR, the BCNR issued a decision recommending that plaintiff receive some of the relief that he requested, and the Secretary of the Navy approved the BCNR's recommendation.  Because he did not receive all of the relief that he requested, plaintiff opted to proceed with his claims before this court.

During the postremand proceedings, plaintiff questioned the effect that the BCNR decision had on the claims set forth in his amended complaint.  For example, in a December 31, 2014 filing, plaintiff indicated:  "The extent and effect of the remand's relevancy remain to be seen via the adversarial judicial process.  Suffice it to say at this point, the remand proceedings are sure to be relevant to some extent and in some way . . . ."  Notice, Dec. 31, 2015, at 2.  Plaintiff further noted:  "[A] motion for judgment on the administrative record from the United States may be an appropriate procedural vehicle for arguing about the effect of the remand proceedings on the adjudication of this case."  Id. at 3.  Defendant, in a February 12, 2015 filing, stated its understanding that plaintiff "intend[ed] to challenge the BCNR's decision" and remarked that a motion for judgment on the administrative record from plaintiff "would be the most expedient method of identifying his allegations of error in the BCNR's decision."  Notice, Feb. 12, 2015, at 1-2.

It is apparent that defendant's understanding of plaintiff's position was not accurate.  During a March 6, 2015 status conference, plaintiff stated:  "The question of the effect of the remand proceedings on the judicial claim is something that I believe needs to be tested through the adversarial process."  Status Conference, Mar. 6, 2015, at 1:27-1:38.  Indeed, in his motion for judgment on the administrative record, plaintiff does not challenge any of the BCNR's recommendations.  Rather, all of his arguments are directed at the Navy's decisions–prior to the remand–to disenroll him from OCS and the NROTC, to stop paying his scholarship and subsistence allowance, and to seek reimbursement of the scholarship benefits that he had already received.

Defendant, in its cross-motion for judgment on the administrative record and response to plaintiff's motion, notes plaintiff's failure to allege any error in the BCNR's decision.  Defendant

asserts that the BCNR's decision is the final agency action on plaintiff's claims, and therefore is the action that plaintiff must challenge.  Because plaintiff did not do so, defendant argues, he cannot prevail on his motion.

Plaintiff disagrees with defendant's contentions.  In his response to defendant's cross-motion and reply in support of his motion, plaintiff argues:

> The Court should properly review [plaintiff's] wrongful disenrollment claims independent of the BCNR's decision in this case because [plaintiff] brought his claims directly to this court and because the scope of the remand was limited to performing an evidentiary function. . . .  [T]he holding[s of decisions in cases in which the plaintiff sought review from a correction board prior to filing suit in the Court of Federal Claims] do[] not apply to situations where the United States requests remand to the correction board after litigation began.  Therefore, the Court should properly review the wrongful discharge claim directly, looking to the BCNR's decision only for its persuasive value.

Pl.'s Reply & Resp. 19.  Plaintiff further argues that if, for the sake of argument, it is assumed that defendant is correct that the court is limited to reviewing the BCNR's decision, then neither party's motion for judgment on the administrative record can be granted because the amended complaint lacks any allegations of error by the BCNR; in other words, the propriety of the BCNR's decision is not before the court.  Accordingly, plaintiff requests that the court either "adjudicate the First Amended Complaint based on the administrative record . . . , using the BCNR's decision for its persuasive value," or "deny both parties' motions for judgment and . . . grant [plaintiff] leave to file a Second Amended Complaint to bring claims regarding errors of the BCNR before the Court."  Id. at 20.

In its reply in support of its cross-motion, defendant counters plaintiff's contentions by asserting that (1) "[f]ollowing remand during the pendency of a claim, [the Court of Federal Claims] reviews the board's decision and does not conduct a de novo review"; (2) "the final decision before [the Court of Federal Claims] is the BCNR decision, not the superseded [disenrollment] decision"; and (3) plaintiff, not defendant, "bears the burden of showing that a board's decision was arbitrary, capricious, and unsupported by substantial evidence."  Def.'s Reply 12.  Moreover, defendant objects to plaintiff's alternative request for leave to file a second amended complaint, explaining:

> Dissatisfied with the BCNR's decision, Mr. Kennedy requested that the United States file a remand administrative record and suggested that the parties file new motions for judgment.  On March 6, 2015, the Court conducted a telephonic status conference and determined that the most efficient manner in which Mr. Kennedy can identify any remaining disagreement with the Navy would be with motions for judgment upon a remand administrative record.  Mr. Kennedy, however, made the litigation decision to ignore this instruction and, in his April 3, 2015 motion for

judgment, argued that the remand never occurred.  Accordingly, because Mr.
Kennedy has had the opportunity to address the merits of the BCNR decision, and
has chosen not to do so, the Court should deny his alternative request.  Moreover,
Mr. Kennedy's request is also unduly prejudicial because the United States has
repeatedly sought to resolve this issue, through numerous motions for judgment,
settlement attempts, and a voluntary remand.  Requiring the Government to file a
fourth motion for judgment would be an inefficient use of both Government and
judicial resources.

Id. at 13-14 (footnote and citations omitted).

Decisions regarding who may serve as an enlisted member of the reserve components of
the Navy and the Marine Corps are made by the Secretary of the Navy.  See, e.g., 10 U.S.C.
§§ 12102 (indicating that military service secretaries prescribe the qualifications for enlistment in
the reserve components), 12641 (reflecting that the military service secretaries prescribe retention
standards for the reserve components), 12681 (noting that the military service secretaries
prescribe regulations for the discharge of enlisted members of the reserve components).  A
former enlistee dissatisfied with the Secretary of the Navy's decision to discharge him from the
reserve component of the Navy or the Marine Corps can pursue one of two courses of action.
One option is for the individual to petition the Secretary of the Navy to correct an error in, or
remove an injustice from, his military records.  See 10 U.S.C. § 1552 (2012).  Such a correction
is made by the Secretary of the Navy acting though a board of civilians (the BCNR) pursuant to
procedures that he has established.  Id. § 1552(a)(1), (3).  Alternatively, the individual can file
suit in federal court.  See Martinez, 333 F.3d at 1304 ("[A]n application to a correction board is .
. . not a mandatory prerequisite to filing a Tucker Act suit challenging [a] discharge.").  But, as
noted above, a court can only review "whether reasonable process has been followed, and
whether the decision maker has complied with established procedures . . . ."  Fisher, 402 F.3d at
1177.

Even if an individual chooses to file suit in the Court of Federal Claims without first
applying to the BCNR for the correction of his military records, the court has the authority to
remand the case to the BCNR.  See 28 U.S.C. § 1491(a)(2) ("In any case within its jurisdiction,
the court shall have the power to remand appropriate matters to any administrative or executive
body or official with such direction as it may deem proper and just.");  accord RCFC 52.2(a).
When the purpose of the remand is to permit the BCNR to revisit a prior decision of the
Secretary of the Navy, the decision of the BCNR becomes the final agency action subject to
judicial review.[12]  See 10 U.S.C. § 1552(a)(4) (providing that corrections of military records by
correction boards are "final and conclusive on all officers of the United States"); Strickland v.

---

[12]  As noted above, the BCNR acts on behalf of the Secretary of the Navy.  See 10 U.S.C.
§ 1552(a)(1), (3).  In some circumstances, the BCNR's decision is final; in other circumstances,
the Secretary of the Navy reviews the BCNR's recommendations and issues his own final
decision.  See 32 C.F.R. §§ 723.6(e), -.7(a).

United States, 423 F.3d 1335, 1339 (Fed. Cir. 2005) (noting that "the correction board process provides for a single final agency action in every case" and that the decision of the Secretary of the Navy–made through the BCNR–"is plainly the final agency action"); see also RCFC 52.2(f)(1)(A) (requiring the parties to file notices "after the filing of the final decision or other action on remand" that indicate "whether the final decision or other action on remand affords a satisfactory basis for disposition of the case"); Sokol v. United States, 120 Fed. Cl. 144 (2015) (reviewing a correction board decision that had been issued pursuant to a remand order); Johnson v. United States, 97 Fed. Cl. 267, 268-69 (2011) ("The Court remanded the matter to the BCNR for further proceedings because of perceived errors in the board's initial decision. . . . The Court must examine whether the BCNR's remand decision 'affords a satisfactory basis for disposition of the case' under Rule 52.2(f)(1)(A)."), aff'd, 467 F. App'x 883 (Fed. Cir. 2012).  The original decision of the Secretary of the Navy is no longer a final decision because he–acting through the BCNR–has reviewed that decision and issued a new final decision that either upheld, revised, or reversed it.  In short, the original decision is superseded by the BCNR's decision.

In this case, plaintiff, at the court's direction, submitted an application to the BCNR for the correction of his military records in which he challenged, on multiple grounds, the propriety of his disenrollment from the NROTC.  The BCNR considered plaintiff's contentions and the relevant evidence, and ultimately concluded that plaintiff had not established that his disenrollment from the NROTC was unjustified or that he was entitled to scholarship benefits for the fall 2004 semester and the 2006-2007 academic year.  In other words, the BCNR revisited a prior final decision of the Secretary of the Navy to disenroll plaintiff from the NROTC and upheld it in a new final decision.  There can be only one final decision concerning the propriety of plaintiff's disenrollment from the NROTC.  Thus, with respect to plaintiff's claim that he is entitled to the scholarship benefits for the fall 2004 semester and the scholarship benefits and subsistence allowance for the 2006-2007 academic year that he would have received had he not been wrongfully disenrolled from the NROTC, the court must review the final decision of the BCNR, and not the original decision of the Secretary of the Navy.

## B.  The Merits of Plaintiff's Claims

The fact that plaintiff does not challenge the BCNR's decision is not fatal to his motion for judgment on the administrative record, however.  In his fourth and fifth claims for relief, plaintiff contends that his disenrollment from the NROTC was contrary to statute, regulation, and procedure.  The BCNR concluded that the disenrollment decision was lawful.  To determine whether the BCNR was correct, the court must conduct a de novo review of the Navy's actions in disenrolling plaintiff from the NROTC to ascertain whether the Navy acted unlawfully.  See Roth, 378 F.3d at 1385; Holley, 124 F.3d at 1468.  In other words, the court's review of the lawfulness of plaintiff's disenrollment from the NROTC would be the same whether or not there was a decision from the BCNR addressing the issue.  Accordingly, the court will address plaintiff's contention that the Navy acted unlawfully when it disenrolled him from the NROTC.

Plaintiff advances three arguments in support of his contention:  (1) the Navy failed to conduct a medical evaluation or convene a medical evaluation board before his disenrollment, as required by 10 U.S.C. § 2107 and DoDI 1215.08; (2) the Navy did not convene a Performance Review Board prior to his disenrollment, as required by CNETINST 1553.12G; and (3) he was denied his right to appear before a Performance Review Board prior to his disenrollment, as required by CNETINST 1553.12G.[13]  The court addresses each argument in turn.

Plaintiff first asserts that the Navy violated 10 U.S.C. § 2107 and DoDI 1215.08 when it failed to conduct a medical evaluation or convene a medical evaluation board prior to his disenrollment from the NROTC.  The relevant subsection of 10 U.S.C. § 2107 provides:

> Payment of financial assistance under this section for, and payment of a monthly subsistence allowance under section 209 of title 37 to, a cadet or midshipman appointed under this section may be suspended on the basis of health-related incapacity of the cadet or midshipman only in accordance with regulations prescribed [by the Secretary of Defense].

10 U.S.C. § 2107(j)(1) (2006); see also id. § 2107(j)(2) (describing what the regulations must include).  The relevant portion of DoDI 1215.08 concerns medical leaves of absence, DoDI 1215.08, ¶ 6.10, indicates that "[t]he decision to place a cadet or midshipman on [a medical leave of absence] shall be made by the Service Secretary or designee," id., and provides:

> Payment of the scholarship and stipend benefits may be suspended during a period of health-related incapacity of the cadet or midshipman only in accordance with policy and regulations prescribed in this Instruction.  Specifically, the medical status and record of each cadet or midshipman who is being considered for an involuntary medical leave of absence shall be independently evaluated by an authorized physician, military or civilian, to evaluate the health-related incapacity or condition.

Id. ¶ 6.10.1.

---

[13]  Plaintiff asserts other violations of statute, regulation, and procedure, but those violations relate to claims that have been dismissed by the court.  See, e.g., Am. Compl. ¶¶ 177-81 (alleging violations of various statutes, regulations, and policy memoranda with respect to the requirement that plaintiff reimburse the federal government for the scholarship benefits that he received prior to his disenrollment from the NROTC), ¶¶ 182-83 (alleging that the Navy violated 10 U.S.C. § 2107 when it suspended his scholarship and subsistence allowance prior to his disenrollment); Pl.'s Mot. 15-21 (arguing the same), 33-35, 42-49 (arguing that the Navy violated 10 U.S.C. § 2005 when it determined his reimbursement obligation), 37 (arguing that the Navy violated various regulations when it failed to consider his waiver request).

Defendant argues that 10 U.S.C. § 2107(j)(1) and the medical leave of absence provisions of DoDI 1215.08 do not apply to plaintiff because plaintiff's scholarship benefits and subsistence allowance were not suspended due to a health-related incapacity; rather, the payments to plaintiff were suspended due to plaintiff's failure to complete OCS. Defendant is correct. By their express terms, the provisions of 10 U.S.C. § 2107 and DoDI 1215.08 relied upon by plaintiff are applicable only when the relevant service secretary places a midshipman or cadet on a medical leave of absence due to, or during, a health-related incapacity. There is no evidence in the administrative record indicating that the Secretary of the Navy placed plaintiff, or even considered placing plaintiff, on a medical leave of absence due to his mental health issues; indeed, the administrative record reflects that immediately after his disenrollment from OCS, plaintiff was seen by a mental health professional who declared that he was unconcerned about plaintiff. Instead, as defendant notes, the Secretary of the Navy suspended payment of plaintiff's scholarship and subsistence allowance because it planned to disenroll plaintiff from the NROTC due to plaintiff's failure to complete OCS. Accordingly, plaintiff has not established that the Navy violated 10 U.S.C. § 2107(j) or the medical leave of absence provisions of DoDI 1215.08 when it disenrolled him from the NROTC.

Plaintiff next argues that the Navy violated CNETINST 1553.12G by not convening a Performance Review Board and, if such a board was convened, by not providing him the opportunity to appear before it. Paragraph 310(d) of CNETINST 1553.12G requires the convening of a Performance Review Board if "[d]isenrollment is not mandatory but could be recommended" or "[a] midshipman could be ordered to active enlisted service or subject to recoupment action as a result of disenrollment." Further, "[t]he midshipman has the right to appear before the board, to submit a written statement, and to present documents or witnesses in his/her behalf." CNETINST 1553.12G, ¶ 310(g).

The evidence in the administrative record reflects that a Performance Review Board was convened, notwithstanding the electronic-mail message that plaintiff received from Captain Ward indicating that a formal Performance Review Board would not convene. Thus, the Navy did not violate CNETINST 1553.12G, ¶ 310(d).

On the other hand, the electronic-mail message that plaintiff received from Captain Ward supports plaintiff's contention that he was deprived of his right to appear before the Performance Review Board. However, the remaining evidence in the administrative record reflects that this violation of paragraph 310(g) of CNETINST 1553.12G had no effect on plaintiff's disenrollment from the NROTC. Pursuant to paragraphs 501(e) and 502(c) of CNETINST 1553.12G, a midshipman in the NROTC is required to complete OCS to qualify for a commission upon graduation, and a failure to qualify for a commission will lead to the midshipman's disenrollment from the NROTC. Because plaintiff failed to complete OCS, his disenrollment from the NROTC was mandatory–a fact that is reflected in many of the disenrollment-related documents contained in the administrative record. Accordingly, even if plaintiff had appeared before the Performance Review Board, he still would have been disenrolled from the NROTC. Plaintiff was therefore not prejudiced by the Performance Review Board's procedural violation.

-30-

In sum, plaintiff has not established that his disenrollment from the NROTC was contrary to statute, regulation, or procedure. Consequently, with respect to plaintiff's remaining claims, the court must deny plaintiff's motion for judgment on the administrative record and grant defendant's cross-motion.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss, and **DISMISSES** (1) plaintiff's breach-of-contract claims for lack of subject matter jurisdiction; (2) plaintiff's claims for scholarship benefits and subsistence allowance that predate, and are unrelated to, his disenrollment from the NROTC as barred by the statute of limitations; (3) plaintiff's claim that he should not be required to reimburse the Navy for the scholarship benefits he received as moot; and (4) plaintiff's claim that he was improperly disenrolled from OCS and the NROTC due to his mental health issues as not justiciable. In addition, with respect to plaintiff's remaining claims, the court **DENIES** plaintiff's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion for judgment on the administrative record. Because plaintiff did not prevail on any of his claims, the clerk shall close this case and enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

-31-