# In the United States Court of Federal Claims

No. 13-165C
(Filed: October 24, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JASON CARL KENNEDY, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Military Pay; NROTC Scholarship Benefits; Quantum; Administrative Record; Supplementation; Effective Judicial Review

Jason C. Kennedy, Aurora, CO, pro se.

William J. Grimaldi, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Chief Judge

In this military pay case, plaintiff Jason Carl Kennedy, a licensed attorney proceeding pro se, contends that the United States Navy ("Navy") improperly disenrolled him from the Naval Reserve Officers Training Corps ("NROTC") program at The George Washington University ("GW") during his senior year of undergraduate studies, depriving him of scholarship benefits to which he was legally entitled. Mr. Kennedy seeks to recover the balance of his scholarship benefits and reimbursement for the interest he has incurred on the student loans that funded his undergraduate education after the Navy terminated his scholarship.

The Board for Correction of Naval Records ("BCNR") ultimately determined that the Navy improperly disenrolled Mr. Kennedy from the NROTC program at GW. Accordingly, the BCNR concluded that Mr. Kennedy is not required to repay the scholarship funds that the Navy expended on his behalf and is entitled to monetary compensation in an amount equal to the balance of the scholarship benefits he would have received had he completed the NROTC program. Mr. Kennedy now argues that the Defense Finance and Accounting Service ("DFAS"), based on a deficient calculation performed by the Naval Service Training Command ("NSTC"), failed to provide him full relief, including consequential damages.

Two motions pertaining to the scope of the administrative record on review are currently pending before the court: (1) defendant's motion to reopen the remand period for the limited purpose of compiling Volume III of the administrative record and (2) Mr. Kennedy's motion to strike Volume III of the administrative record, to supplement the administrative record through

discovery, and for an evidentiary hearing on damages. As explained below, the proper way to resolve the merits of this case is through cross-motions for judgment on the administrative record. Further, Volume III is properly a part of that record and is sufficient for the court to conduct effective judicial review of the Navy's actions. Accordingly, the court denies Mr. Kennedy's motion on its merits and denies defendant's motion as moot.

## I. BACKGROUND

Mr. Kennedy enrolled at GW in the Fall 2003 semester to begin his undergraduate studies. In the Spring 2005 semester, i.e., the second semester of his sophomore year, the Navy awarded him a three-year NROTC scholarship. Mr. Kennedy funded his education with student loans and a University and Alumni Award each semester when he was not receiving NROTC scholarship benefits. The terms of the scholarship mandated, as relevant here, that he earn a bachelor's degree, complete the NROTC curriculum, and fulfill various military requirements (including acceptance of an appointment as a commissioned officer in the United States Marine Corps Reserve upon completing the NROTC program). If Mr. Kennedy failed to meet these requirements, the Navy could, at its option, order him to either serve on active duty or reimburse the Navy for educational costs expended on his behalf.

One of the military requirements was to successfully complete the six-week United States Marine Corps Officer Candidate School ("OCS"), a prerequisite to becoming a commissioned officer. Mr. Kennedy entered OCS in late May 2006, i.e., at the beginning of the break between his junior and senior years at GW. He failed to complete OCS and was not recommended to reapply, which resulted in a Performance Review Board at GW recommending his disenrollment from the NROTC program. By that time, the Navy had spent $50,675.00 on Mr. Kennedy's behalf for tuition, fees, and books for the Spring 2005, Fall 2005, and Spring 2006 semesters. The Navy did not provide full scholarship benefits for Mr. Kennedy's senior year, i.e., the Fall 2006 and Spring 2007 semesters. The Navy officially disenrolled Mr. Kennedy in March 2007 and ordered recoupment of the scholarship funds previously expended. After graduating from GW on May 20, 2007, Mr. Kennedy made twenty-six payments to DFAS totaling $15,880.04 between August 2007 and January 2013. In the meantime, he attended law school and was admitted to the Colorado bar in October 2012.

Mr. Kennedy filed suit in this court on March 5, 2013, and amended his complaint on July 1, 2013. The crux of the amended complaint—in which he asserted three counts alleging breach of contract and two counts alleging statutory violations—is that he was improperly disenrolled from the GW NROTC program. With respect to the alleged breaches of contract, Mr. Kennedy asserted that the Navy (1) improperly directed recoupment of the scholarship funds expended on his behalf, (2) failed to provide three full years of scholarship benefits, and (3) violated the duty of good faith and fair dealing by denying him the opportunity to demonstrate his suitability for a commission and violating laws and regulations. Mr. Kennedy also alleged that he was statutorily entitled to both the scholarship benefits and subsistence allowances that he would have received had he not been improperly disenrolled from the NROTC program. He sought a waiver of the recoupment requirement, $71,290.04 in damages,

prejudgment and postjudgment interest, attorney fees and costs, and reimbursement for the interest paid on his student loans.[1]

The court remanded the matter to the BCNR, which concluded that although the Navy violated Mr. Kennedy's due process rights with respect to a Performance Review Board, his disenrollment from the GW NROTC program was not improper because he had failed to complete OCS. The BCNR recommended that the Navy waive Mr. Kennedy's recoupment requirement, refund his payments already made, and provide no further relief. The Secretary of the Navy's designee approved the BCNR's recommendation on November 10, 2014.[2] Mr. Kennedy then informed the court that he would proceed with his claims here because the BCNR did not afford complete relief, and asked that defendant file an administrative record of the BCNR proceedings. After the record was filed, the parties briefed cross-motions for judgment on the administrative record and defendant's motion to dismiss. The case was reassigned to the undersigned during that briefing.

In a November 30, 2015 opinion, the court held that it lacked jurisdiction over Mr. Kennedy's breach-of-contract claims because his "entitlement to the NROTC scholarship was governed by statute, not contract," but possessed jurisdiction to entertain Mr. Kennedy's statutory claims because they were "based on money-mandating statutes." Kennedy v. United States, 124 Fed. Cl. 309, 325-26 (2015), rev'd in part, 845 F.3d 1376 (Fed. Cir. 2017). The court further concluded that Mr. Kennedy's claim for scholarship benefits for the Fall 2004 semester was unrelated to his disenrollment from the NROTC and accrued in March 2005, when he executed his enlistment agreement without having received benefits for the prior semester, and thus fell outside of the six-year statute of limitations applicable in the United States Court of Federal Claims ("Court of Federal Claims"). Id. at 326-27. Mr. Kennedy's claim for waiver of the recoupment requirement and return of payments previously made were dismissed as moot since that relief had already been provided. Id. at 328. However, the court observed that Mr. Kennedy's claims that he would have received the full scholarship benefits and subsistence allowance for his senior year, i.e., the Fall 2006 and Spring 2007 semesters, absent the alleged improper disenrollment remained viable. Id. at 327. The court explained that although "the determination of a service member's fitness to serve is within the province of the military and is entitled to deference," courts are nonetheless "permitted to review whether a fitness determination was made in violation of statute, regulation, or procedure." Id. at 328-29. After all, process matters.

---

[1] Mr. Kennedy computed his damages as follows: $15,880.04 for payments made to DFAS pursuant to the recoupment requirement, $15,395.00 for tuition and fees for the Fall 2004 semester, a $425.00 book allowance for the Fall 2004 semester, $33,590.00 for tuition and fees for the Fall 2006 and Spring 2007 semesters combined, a $1,000.00 book allowance for the Fall 2006 and Spring 2007 semesters combined, and $5,000.00 for a GW NROTC subsistence allowance at $500.00 per month for ten months to represent the Fall 2006 and Spring 2007 semesters combined.

[2] DFAS subsequently refunded the $15,880.04 in recoupment payments that Mr. Kennedy had previously made.

In considering the parties' cross-motions for judgment on the administrative record, the court rejected Mr. Kennedy's arguments that a medical exam was required prior to his disenrollment and that a Performance Review Board was not convened. Id. at 333. The court found that a Performance Review Board was convened and that although Mr. Kennedy was indeed denied his right to appear before it, that denial was a harmless error because, as a result of his failure to complete OCS, Mr. Kennedy's "disenrollment from the NROTC was mandatory—a fact that [was] reflected in many of the disenrollment-related documents contained in the administrative record." Id. at 333-34. Accordingly, the court granted defendant's cross-motion for judgment on the administrative record with respect to Mr. Kennedy's remaining claims. Id.

On appeal, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") noted that it "need not consider" the undersigned's ruling that the Court of Federal Claims lacked jurisdiction over Mr. Kennedy's breach-of-contract claims because Mr. Kennedy "[did] not appeal that ruling." Kennedy v. United States, 845 F.3d 1376, 1381 (Fed. Cir. 2017). The Federal Circuit also agreed with the undersigned's (1) conclusion that Mr. Kennedy's claim for scholarship benefits for the Fall 2004 semester was time-barred, (2) dismissal of Mr. Kennedy's claim for waiver of recoupment and reimbursement for payments previously made, (3) finding that Mr. Kennedy's claim for scholarship benefits for the Fall 2006 and Spring 2007 semesters was viable, and (4) holding that the merits of the Navy's decision to disenroll Mr. Kennedy from the NROTC program was not justiciable but that the court could nevertheless consider whether such disenrollment was procedurally sound. Id. at 1381-82. The Federal Circuit further determined that the undersigned properly rejected Mr. Kennedy's arguments concerning the necessity of a medical examination prior to disenrollment and whether a Performance Review Board was actually held (finding that it was "convened, albeit without a physical meeting"). Id. at 1382.

However, the Federal Circuit disagreed with one "limited point"—the undersigned's finding that Mr. Kennedy's disenrollment from the NROTC was inevitable and, therefore, the denial of a personal appearance before the Performance Review Board was harmless error. Id. at 1382-83. The Federal Circuit explained that the Secretary of the Navy, not the Commanding Officer's Board at OCS, "has the final say on who may attend OCS." Id. 1383. Therefore, according to the Federal Circuit, the Navy's denial to Mr. Kennedy of a personal appearance before the Performance Review Board was not harmless error because Mr. Kennedy's disenrollment from NROTC was not inevitable; had the board denied his request to reapply to OCS, he could have appealed that decision. Id. Further, the board "could have awarded him greater relief than the waiver of tuition recoupment," including additional tuition payments. Id. The Federal Circuit remarked that it was not possible to reconvene the Performance Review Board, but the BCNR could nevertheless "hear the case Mr. Kennedy would have made to the [board]" and possibly recommend "that Mr. Kennedy receive further relief." Id. Ultimately, the Federal Circuit "reverse[d] the judgment that the violation of Mr. Kennedy's due process rights was harmless" and remanded the case to this court with instructions to remand to the BCNR. Id. at 1383-84.

On March 27, 2017, the court entered a stay of proceedings, remanded the case to the BCNR, and established a six-month remand period. The court later extended the remand period to November 30, 2017, to allow Mr. Kennedy to make his personal appearance on November 2, 2017, and provide the BCNR with enough time to issue a recommendation and obtain any necessary approvals. In a November 20, 2017 decision, the BCNR determined that certain corrections should be made to Mr. Kennedy's military records and that he "is entitled to the advanced educational benefits for the remaining three semesters at [GW] to which he would have been entitled had he not been disenrolled from the [GW] NROTC program after his disenrollment from [OCS]." Decision on Remand 2-3, ECF No. 86. The BCNR observed that Mr. Kennedy "previously received waiver of the recoupment of the scholarship benefits he received" and that it "explicitly limit[ed] [Mr. Kennedy's] monetary relief to the receipt of the balance of NROTC scholarship benefits which he would have received had he completed the NROTC program." Id. at 12 (emphasis added). Ultimately, as relevant here, the BCNR recommended that DFAS

> complete an audit of [Mr. Kennedy's] records and determine the value of the balance of the remaining three semesters of tuition and fees . . . to which [Mr. Kennedy] was entitled prior to his disenrollment from NROTC to include the school-book allowance(s) and the subsistence allowance(s) for that period [and that Mr. Kennedy] receive payment in the amount of the determined value.

Id. at 13. The BCNR asked the NSTC to provide DFAS with a determination of the monetary compensation to which Mr. Kennedy would have been entitled had he completed the GW NROTC program so that DFAS could complete the necessary audit and issue payment accordingly. The Secretary of the Navy's designee approved the BCNR's recommendation on November 29, 2017, and the BCNR's decision was received by the court on December 1, 2017.

Although defendant subsequently represented to the court that the BCNR awarded Mr. Kennedy the full relief he had sought in his Federal Circuit appeal, Mr. Kennedy moved to extend the stay of proceedings pending the outcome of the DFAS audit. The court granted that motion, extending the stay through March 27, 2018. During the pendency of the stay, the NSTC asked Mr. Kennedy to provide a transcript for the semesters at issue, a completed NROTC program cost form, and documentation of tuition payments and invoices. Mr. Kennedy provided the requested transcript and cost form. He also provided, in lieu of his individual tuition records, documentation of the GW official cost of attendance. Three issues arose: (1) whether the costs of Mr. Kennedy's student loans would be accounted for as part of his claim for breach of the scholarship contract, (2) whether the Fall 2004 semester expenses were properly included on Mr. Kennedy's program cost form, and (3) the relevance of the actual tuition invoices versus the figures regarding cost of attendance.

Regarding the first issue, the NSTC indicated that its task was simply to provide DFAS with the amount that Mr. Kennedy would have been entitled to receive had he not been disenrolled from the GW NROTC program. Regarding the second issue, Mr. Kennedy indicated

that his Fall 2004 tuition should have been paid as part of his three-year scholarship. Regarding the third issue, the NSTC explained that it required tuition invoices to calculate scholarship benefits pursuant to applicable regulations and the Educational Service Agreement between the NSTC and GW. The NSTC also remarked that actual compensation pursuant to an NROTC scholarship can vary from the official cost of attendance because, for example, certain fees could increase the compensation owed, whereas non-NROTC scholarships that reduce tuition costs would reduce compensation.

On April 10, 2018, Mr. Kennedy filed a status report in which he suggested that further proceedings before this court were necessary. He asserted that his "entitlement to relief has been established" and therefore the Navy should "honor [his] contractual entitlement" based on the BCNR's reference to his "six-semester NROTC agreement." Pl.'s RCFC 52.2 Notice 2-3, ECF No. 91. He characterized the NSTC's "refusing to account for [his] consequential damages" as a refusal "to provide complete relief." Id. at 6. He also averred that his entitlement to relief should be measured by tuition charges (i.e., the official cost of attendance) rather than tuition payments (i.e., his tuition invoices) because, according to Mr. Kennedy, the NSTC manual does not contain language supporting the NSTC's position that scholarship benefits can be less than the tuition charges. Mr. Kennedy attached nine documents to his status report. Eight of these documents showed communications between himself and the NSTC, and the ninth document was a copy of the NSTC M-1533.2B (August 2017): Regulations for Officer Development ("NSTC M-1533.2B") manual referenced within those communications.

On April 19, 2018, the court conducted a status conference to discuss how to proceed in light of the impasse regarding the tuition invoices. On April 24, 2018, Mr. Kennedy forwarded a GW account summary that contained tuition invoice ledgers for his entire time at GW to defense counsel.[3] Defense counsel then forwarded the tuition invoice ledgers to the NSTC to facilitate calculation of the amount owed to Mr. Kennedy. On May 10, 2018, the NSTC determined that Mr. Kennedy was owed $20,644.25, all of which was nontaxable.[4] The total represented the excess of tuition and fees charged over the University and Alumni Award for both the Fall 2006 and Spring 2007 semesters, the book stipend for the Spring 2007 semester, and a subsistence allowance for 225 days.

After additional filings by the parties, the court ordered that the administrative record be filed, set deadlines for motions concerning the scope or contents of the administrative record, and stated that it would not entertain any motions regarding the merits of Mr. Kennedy's claim until after the motions concerning the administrative record itself were resolved. Defendant filed the administrative record on May 31, 2018. The administrative record contains three volumes: (1) a record of the BCNR proceedings upon the second remand, (2) an audio recording of Mr. Kennedy's November 2, 2017 hearing before the BCNR, and (3) documents relevant to the

---

[3] The parties dispute the characterization and effect of Mr. Kennedy's act of sharing the tuition invoices.

[4] The May 10, 2018 determination letter corrected a May 2, 2018 determination letter that had classified a portion of the total amount due as taxable.

NSTC's calculation of the amount owed to Mr. Kennedy.[5] On July 2, 2018, defendant filed a motion to reopen the remand period for the limited purpose of compiling the documents relevant to the NSTC's calculation of the amount owed to Mr. Kennedy because Mr. Kennedy had argued, during the April 19, 2018 status conference, that the remand period had ended before the NSTC initiated the process of calculating the amount due to him, and the parties should therefore enter formal discovery with respect to damages. That same day, Mr. Kennedy filed a motion to strike Volume III of the administrative record, to supplement the administrative record through discovery, and for an evidentiary hearing on damages. Both motions are fully briefed, and the court deems oral argument unnecessary.

## II. ANALYSIS

At this stage of the case, the merits have already been resolved in Mr. Kennedy's favor: the Navy waived Mr. Kennedy's recoupment requirement and reimbursed him for payments made pursuant to that recoupment, and Mr. Kennedy is entitled to the remaining scholarship benefits that he would have received had he not been improperly disenrolled from the GW NROTC program. The remaining issues concern quantum, not liability. Resolution of the pending motions will shape the court's review of the Navy's calculation of damages.

### A. Judgment on the Administrative Record Will Appropriately Resolve This Case

The first dispute currently before the court concerns the proper procedural vehicle for resolving this case. Mr. Kennedy argues that he is entitled to an evidentiary hearing on damages because the NSTC neither considered Mr. Kennedy's position with respect to calculating those damages nor invited Mr. Kennedy to submit information beyond that which the NSTC requested. In essence, Mr. Kennedy argues that the NSTC's calculation of damages is flawed based on its failure to consider all of the relevant evidence. Defendant contends that such an argument goes to the merits of Mr. Kennedy's claim and thus is not properly before the court at this stage of the case, and that military pay cases are resolved based on the administrative record.

Defendant is correct. The court previously determined, in its earlier opinion, that Mr. Kennedy's military pay claim is statutory in nature and that the scholarship agreement is not an independently enforceable contract. Kennedy, 124 Fed. Cl. at 323-25. That holding was left intact by the Federal Circuit. It is therefore the law of the case and need not be revisited. Additionally, binding precedent establishes that in the Court of Federal Claims, military pay cases based upon unlawful discharge—the scenario present in the case at bar—are resolved "under the same standard as any other agency action," which "necessarily limits [this court's] review to the administrative record." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (relying on Martinez v. United States, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc)); accord Walls v. United States, 582 F.3d 1358, 1368 (Fed. Cir. 2009) ("Review of a military corrections board is limited to the administrative record."). Other judges of this court have also recognized

---

[5] Volume III of the administrative record contains, among other material, all of the documents that Mr. Kennedy attached to his April 10, 2018 RCFC 52.2 Notice, except for the NSTC M-1533.2B manual.

this principle. Indeed, "[m]ilitary pay cases involving decisions of a military correction board and a service member's subsequent entitlement to appropriate monetary compensation under the U.S. Code are reviewed on the administrative record under the same standard as any other agency action." Sharpe v. United States, 134 Fed. Cl. 805, 813-14 (2017), appeal docketed, No. 18-1406 (Fed. Cir. Jan. 12, 2018). An evidentiary hearing on damages is thus inappropriate under the generally applicable principle of administrative law that in reviewing agency actions, "a judicial judgment cannot be made to do service for an administrative judgment" because courts are "not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach [their] own conclusions based on such an inquiry." I.N.S. v. Ventura, 537 U.S. 12, 16 (2002) (internal quotation marks omitted).

In short, Mr. Kennedy's challenge to the Navy's actions must be resolved through cross-motions for judgment on the administrative record. Whether the NSTC's benefits calculation is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law," Metz, 466 F.3d at 998 (internal quotation marks omitted), is a merits issue that can be addressed within such a motion. Although the court will not hold an evidentiary hearing on damages, the court will hear argument with respect to the parties' cross-motions for judgment on the administrative record, either in person or telephonically, at Mr. Kennedy's request, so that he has every opportunity to present his arguments to the court.

### B. Volume III Is Properly Contained Within the Administrative Record

The next dispute concerns the propriety of Volume III of the administrative record. Mr. Kennedy asserts that Volume III should not be part of the administrative record because (1) the remand period had already expired when the NSTC performed its benefits calculation and (2) due to the scope of the court's remand, he was only afforded the opportunity to present evidence to the BCNR, and not the NSTC or DFAS. He characterizes the NSTC's benefits calculation as an attempt to deny him all of the relief to which he is entitled, and relies on Sanders v. United States for the proposition that he cannot be given only "half-a-loaf of relief" because "once a discretionary decision is made to correct a record, the grant of appropriate money relief is not discretionary but automatic." 219 Ct. Cl. 285, 301 (1979) (internal quotation marks omitted).

Whether Mr. Kennedy has received all of the relief to which he is entitled is a merits determination that is not properly before the court at this stage of the proceedings. See supra Section II.A. Whether Volume III is properly part of the administrative record depends on the scope of the remand proceedings themselves. Defendant posits that the administrative record properly includes documentation related to the NSTC's benefits calculation because the NSTC's actions merely implemented the BCNR's decision (which was approved during the remand period) and the relevant agency is the Navy as a whole, not just the BCNR. Alternatively, defendant asks the court to reopen the remand period for the limited purpose of allowing the documents regarding the NSTC's benefits calculation to be compiled.

Defendant is correct that "the proper agency action includes both the BCNR decision and the implementation of that decision." Sharpe, 134 Fed. Cl. at 814. That the NSTC, rather than the BCNR, calculated Mr. Kennedy's scholarship benefits is of no moment. A third remand, or the reopening of the second remand, so that the Navy can do what the parties agree the Navy has already done is unnecessary because it would only serve to elevate form over substance. Further, the calculation of Mr. Kennedy's scholarship benefits must be contained within the administrative record under Rule 52.1(a) of the Rules of the United States Court of Federal Claims ("RCFC"), which mandates that an administrative record of agency action be filed with the court whenever such action is "relevant to a decision in a case." The relevancy of the NSTC's calculation cannot reasonably be questioned because quantum is the only remaining matter to be resolved. The lack of such information in the administrative record would preclude effective judicial review, and therefore it must remain. See Raytheon Co. v. United States, 121 Fed. Cl. 135, 156 (2015).

Mr. Kennedy's suggestion that he provided the GW tuition invoice ledgers to defendant's counsel during settlement negotiations, requiring its exclusion from the administrative record pursuant to Rule 408 of the Federal Rules of Evidence ("FRE"), misses the mark. The court agrees with Mr. Kennedy that materials falling under the auspices of FRE 408 need not be marked in a particular manner when transmitted to the opposing party so long as the nature and intent of that transmission is clear, but that is not the end of the inquiry. As relevant here, FRE 408(a)(2) provides that "[e]vidence of . . . conduct or a statement made during compromise negotiations about the claim" is "not admissible—on behalf of any party—to either prove or disprove the validity or amount of a disputed claim." The tuition invoice ledgers cannot be characterized as "conduct or a statement made." They are documentary evidence, not statements. In any event, the court had already indicated, during the April 19, 2018 status conference, that it would compel production of the ledgers if necessary because it was reasonable for the NSTC to require a receipt to calculate scholarship benefits. Therefore, Mr. Kennedy cannot use FRE 408 as a shield to exclude the ledgers from the administrative record.

In short, the NSTC's calculation of Mr. Kennedy's scholarship benefits, including all of the documents relied upon in forming that calculation, is properly contained within the administrative record. Defendant's motion to reopen the remand period is therefore moot, and Mr. Kennedy's motion to strike Volume III must be denied.[6]

### C. The Administrative Record Is Sufficient for Effective Judicial Review

Finally, the court addresses Mr. Kennedy's request for supplementation of the administrative record through discovery. Mr. Kennedy posits that he should be entitled to discover evidence regarding the impact of the University and Alumni Award upon his NROTC scholarship benefits. He also declares that he was not permitted to submit relevant evidence to the NSTC regarding the amount to which he is entitled. Specifically, Mr. Kennedy remarks that (1) he had no opportunity to submit information pertaining to the subsistence allowance or the

---

[6] Mr. Kennedy's argument that Volume III of the administrative record should be excluded because it is not certified is unavailing. The administrative record is indeed certified.

cost of his student loans; (2) the NSTC did not research why the University and Alumni Award did not reduce the value of his NROTC scholarship award in the Spring 2005, Fall 2005, and Spring 2006 semesters; and (3) the administrative record does not contain tuition invoices for the semesters for which he was receiving scholarship benefits. According to Mr. Kennedy, discovery is necessary for him to be able to present evidence of the damages to which he is entitled.

Defendant stresses that evidence regarding the impact of the University and Alumni Award upon Mr. Kennedy's NROTC scholarship benefits is already contained within the administrative record and therefore discovery is neither necessary nor appropriate. Defendant avers that the court should not allow Mr. Kennedy to use the discovery process as a method of introducing evidence that he could have submitted to the BCNR during the remand. Defendant also notes that to the extent that the GW tuition invoice ledgers were unavailable to the NSTC, it is because Mr. Kennedy refused to provide them.

In military pay cases, courts must decide whether the moving party is entitled to judgment based on the evidence in the administrative record. RCFC 52.1 governs motions for judgment on the administrative record. In considering such motions, courts "must decide whether a party has met its burden of proof based on the evidence in the record." Sharpe, 134 Fed. Cl. at 817. The "ordinary standard of review" in the Court of Federal Claims with respect to agency actions is determining "whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Metz, 466 F.3d at 998 (internal quotation marks omitted); see also 5 U.S.C. § 706 (2012).

Generally, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973); accord Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009). An administrative record typically contains the materials developed and considered by an agency in making a decision subject to judicial review. See Camp, 411 U.S. at 142-43 (remarking that an agency's finding must be "sustainable on the administrative record made" by the agency at the time of its decision); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 349-50 (1997) ("[T]he primary focus of the court's review should be the materials that were before the agency when it made its final decision."); see also Joint Venture of Comint Sys. Corp. v. United States, 100 Fed. Cl. 159, 167-68 (2011) (distinguishing between completion and supplementation of the administrative record and emphasizing that a "complete administrative record is the predicate to meaningful and effective judicial review of agency action, and it is that complete record that is subject to supplementation, if necessary").

The administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with [5 U.S.C. § 706]." Axiom, 564 F.3d at 1381; accord id. at 1380 ("[S]upplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." (internal quotation marks omitted)). Judicial review cannot be effective when "the evidence was unavailable below, or where a plaintiff has made a strong showing of bad faith or improper behavior which creates serious doubts about the integrity of the administrative action." Stanton v. United States, 111

Fed. Cl. 263, 266 (2013). Supplementation is appropriate when "information upon which the agency relied when it made its decision" is lacking, including "documentation revealing the agency's decision-making process." Parcel 49C Ltd. P'ship v. United States, 127 Fed. Cl. 570, 573 (2016). Supplementation might also be necessary "when a subjective value judgment has been made but not explained" or when the administrative record "is missing relevant information that by its very nature would not be found in an agency record—such as evidence of bad faith, . . . or the content of conversations." Id. (internal quotation marks omitted). Information that "should have been considered by the agency," but was not, is also appropriate for supplementation. E. W., Inc. v. United States, 100 Fed. Cl. 53, 75 (2011). The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient. DataMill, Inc. v. United States, 91 Fed. Cl. 722, 732 (2010).

Mr. Kennedy has not met his burden of showing that the existing record is insufficient to permit effective judicial review of the NSTC's calculation of the amount of scholarship benefits to which he would have been entitled had he not been disenrolled from the GW NROTC program.

First, evidence pertaining to the impact of the University and Alumni Award on scholarship benefits is already contained within the administrative record in the form of Mr. Kennedy's tuition invoice ledgers. Material that is "duplicative of material in the existing record" need not be added via supplementation. PlanetSpace, Inc. v. United States, 90 Fed. Cl. 1, 9 (2009). As defendant observes, the Navy did not reduce Mr. Kennedy's scholarship benefits by the amount of his University and Alumni Award in the Spring 2005, Fall 2005, and Spring 2006 semesters because Mr. Kennedy did not receive an award for those semesters. Further, the communications from the NSTC describe the impact of an award on benefits and cite to the NSTC M-1533.2B manual. The NSTC M-1533.2B manual itself is a publicly available document and thus may be freely cited by the parties without its inclusion in the administrative record.[7] Mr. Kennedy is correct, however, that the NSTC M-1533.2B manual is a document that was updated in August 2017. The relevant manual applicable for the Fall 2006 and Spring 2007 semesters—Mr. Kennedy's senior year—is Chief of Naval Education and Training Instruction 1533.12G (August 9, 2002): Regulations for the Administration and Management of the NROTC ("CNETINST 1533.12G"). Effective judicial review of the NSTC's benefits calculation requires applying the regulations that were in effect when Mr. Kennedy should have received the scholarship benefits rather than those that were in effect when the NSTC performed its calculation. However, CNETINST 1533.12G need not be added to the administrative record through supplementation. As with the NSTC M-1533.2B manual, CNETINST 1533.12G is

---

[7] Similarly, the parties are free to cite to the GW Bulletin or the official webpage of the GW Office of Student Financial Assistance in discussing GW's financial aid policies, including how GW applies the University and Alumni Award to student accounts.

publicly available—indeed, Mr. Kennedy cited to CNETINST 1533.12G in his submissions to the BCNR—and may be cited by the parties without its inclusion in the administrative record.[8]

Second, the court rejects Mr. Kennedy's arguments concerning his inability to submit evidence to the NSTC. Mr. Kennedy did, in fact, submit information to the NSTC—his transcripts, the NROTC program cost form, and documentation pertaining to the GW official cost of attendance, not to mention the tuition invoice ledgers that were routed through defense counsel—and all of that information is now properly contained within Volume III of the administrative record. Indeed, because the NSTC did not request the GW official cost of attendance, it is clear that all of Mr. Kennedy's submissions, whether requested or otherwise, are contained within the administrative record. The NSTC's consideration of the information submitted is a merits issue. Moreover, Mr. Kennedy was free to submit all manner of documents to the BCNR during both remands, and he did so. Therefore, to the extent that the administrative record lacks information that Mr. Kennedy desires it to include, the omission arises from his failure to submit it, and thus it would be improper to allow the submission of such information at this stage. See Barnick v. United States, 591 F.3d 1372, 1382 (Fed. Cir. 2010) ("[W]here evidence could have been submitted to a corrections board and was not, the evidence is properly excluded by the Court of Federal Claims."). Additionally, evidence concerning the cost of Mr. Kennedy's student loans is irrelevant to his statutory claim for scholarship benefits, and his contractual claims are no longer before the court. Further, evidence regarding the subsistence allowance is already contained within the administrative record. More evidence is unnecessary for effective judicial review of that calculation, which involved multiplying the applicable daily rate by the number of additional days to which Mr. Kennedy was entitled to the allowance. In that respect, the subsistence allowance is similar to the book stipend for each semester. Because each is simply a discrete, predetermined amount, additional evidence is not needed.

Third, Mr. Kennedy's assertion that the administrative record does not contain tuition invoices for the semesters for which he did receive scholarship benefits—Spring 2005, Fall 2005, and Spring 2006—is false. The tuition invoice ledgers contained within Volume III of the administrative record encompass every semester for which he attended GW, i.e., both those in which he received and those in which he did not receive NROTC scholarship benefits.

Fourth, Mr. Kennedy's suggestion that he should be entitled to discover evidence regarding how the NROTC scholarship was applied to other student accounts beyond his own is not well taken. Such evidence is irrelevant to his statutory claim that the NSTC improperly calculated the benefits to which he was entitled under the law and regulations in effect for the relevant time period.

---

[8] Other potentially relevant documents that are publicly available, such as Department of Defense Instruction 1215.08 (June 26, 2006) and Department of Defense Directive 1215.8 (March 25, 1994), may also be cited by the parties without their inclusion in the administrative record.

Finally, Mr. Kennedy incorrectly suggests that the NSTC's designation of a portion of his benefits as taxable shows irregularity such that he is entitled to discovery. The NSTC initially designated a portion of his benefits as taxable, but corrected that error in a follow-up notice eight days later designating all of the benefits as nontaxable. Both notices are contained within Volume III of the administrative record, and thus are available for the court to consider. The documents that Mr. Kennedy attached to his motion for discovery showing that a check was issued with taxes withheld are irrelevant to whether his benefits were properly calculated because those documents reflect a DFAS processing error, not an NSTC calculation error.[9]

In short, Mr. Kennedy has not shown that any of the evidence that he seeks to discover is necessary for effective judicial review. Therefore, his motion must be denied to the extent that he seeks to supplement the administrative record through discovery.

### III. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, lack merit, or are unnecessary for resolving the issues currently before the court.

The only remaining claim before the court is Mr. Kennedy's statutory claim to scholarship benefits, which include the book stipend and subsistence allowance, for the Fall 2006 and Spring 2007 semesters. The BCNR has determined that Mr. Kennedy is entitled to the full amount of the scholarship benefits to which he would have been entitled had he not been improperly disenrolled from the GW NROTC, and the NSTC has calculated that amount. This court's task is therefore limited to reviewing the propriety of the NSTC's calculation of that quantum. The court will conduct that review based on the three volumes of the administrative record filed by defendant on May 31, 2018, which is sufficient to permit effective judicial review; an evidentiary hearing on damages and supplementation of the record through discovery are inappropriate.

Accordingly, the court **DENIES AS MOOT** defendant's motion to reopen the remand. The court **DENIES** Mr. Kennedy's motion to strike, to supplement the administrative record through discovery, and for an evidentiary hearing on damages. The court will, however, hear argument with respect to the parties' cross-motions for judgment on the administrative record once those motions are fully briefed, either in person or telephonically, at Mr. Kennedy's request.

---

[9] Defense counsel indicates that he is working with DFAS to rectify the withholding mistake.

The parties shall confer and file, **no later than Wednesday, November 7, 2018**, a joint status report suggesting a schedule for filing cross-motions for judgment on the administrative record. As part of their joint status report, the parties shall provide at least five possible dates and a suggested time for oral argument. As a courtesy to Mr. Kennedy, the oral argument can be conducted in Denver, Colorado if he so chooses.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge
