# In the United States Court of Federal Claims

No. 13-165C
(Filed: August 30, 2019)

| | |
|---|---|
| JASON CARL KENNEDY, Plaintiff, v. THE UNITED STATES, Defendant. | Military Pay; NROTC Scholarship Benefits; Quantum; Cross-Motions for Judgment on the Administrative Record |

Jason C. Kennedy, Aurora, CO, pro se.

William J. Grimaldi, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this military pay case, plaintiff Jason Carl Kennedy, a licensed attorney proceeding pro se, contends that the United States Navy ("Navy") improperly disenrolled him from the Naval Reserve Officers Training Corps ("NROTC") program at The George Washington University ("GW") during his senior year of undergraduate studies, depriving him of scholarship benefits to which he was legally entitled. Mr. Kennedy seeks to recover the balance of his scholarship benefits and reimbursement for the interest he has incurred on the student loans that funded his undergraduate education after the Navy terminated his scholarship.

The Board for Correction of Naval Records ("BCNR") ultimately determined that the Navy improperly disenrolled Mr. Kennedy from the NROTC program at GW. Accordingly, the BCNR concluded that Mr. Kennedy is not required to repay the scholarship funds that the Navy expended on his behalf and is entitled to monetary compensation in an amount equal to the balance of the scholarship benefits he would have received had he completed the NROTC program. Mr. Kennedy now argues that the Defense Finance and Accounting Service ("DFAS"), based on a deficient calculation performed by the Naval Service Training Command ("NSTC"), failed to provide him full relief.

Currently before the court are the parties' cross-motions for judgment on the administrative record. As explained below, the NSTC did not err in calculating Mr. Kennedy's scholarship benefits. Therefore, the court grants defendant's motion and denies Mr. Kennedy's cross-motion.

# I. BACKGROUND

## A. Statutory Context

Congress established the NROTC "[f]or the purpose of preparing selected students for commissioned service" as officers in the Navy or United States Marine Corps ("Marine Corps").[1] 10 U.S.C. § 2102 (2000). Each scholarship recipient in the NROTC program enlists in the reserve component of the Navy or Marine Corps, id. § 2107(b), and is eligible to receive financial assistance to cover the costs of "tuition, fees, books, and laboratory expenses" while completing baccalaureate studies, id. § 2107(c)(1).[2] Such financial assistance "may also be provided during a fifth academic year or during a combination of a part of a fifth academic year and summer sessions" if a scholarship recipient needs the additional time to complete his or her bachelor's degree and secures the necessary approvals. Id. In addition to receiving financial assistance in the form of a tuition scholarship and textbook stipend, NROTC program participants who are appointed as midshipmen are entitled to a subsistence allowance. 37 U.S.C. § 209(b) (2000). Each program participant who "satisfactorily complet[es] the academic and military requirements of the four-year program" is eligible for appointment as an ensign in the Navy or a second lieutenant in the Marine Corps. 10 U.S.C. § 2107(a); see also id. § 741 (listing the ranks of commissioned officers in each military branch).

## B. Factual and Procedural History

A detailed description of the factual and procedural history of this case is provided in the court's ruling pertaining to the scope of the administrative record, see Kennedy v. United States, 140 Fed. Cl. 506, 510-15 (2018), and need not be repeated herein. Nevertheless, a summary of the relevant facts is presented below to provide context to the instant decision.

Mr. Kennedy enrolled at GW in the Fall 2003 semester to begin his undergraduate studies, and eventually completed a Bachelor of Arts degree (majoring in Political Science and minoring in History) in Spring 2007. NSTC 60-61. During the Spring 2005 semester, i.e., the second semester of his sophomore year, the Navy awarded him a three-year NROTC scholarship. Id. at 95-98. Accordingly, he enlisted in the Marine Corps Reserve on March 16, 2005. Id. at

---

[1] Unless otherwise indicated, the court derives the facts in this opinion from Volume I of the administrative record ("BCNR ___"), which contains a record of proceedings before the BCNR, and Volume III of the administrative record ("NSTC ___"), which contains a record of the implementation of the BCNR's decision, i.e., the NSTC's calculation of benefits and payment by the DFAS. (Volume II of the administrative record is an audio recording of an oral hearing before the BCNR, and is not cited by either party or the court.) For documents that are included in both Volume I and Volume III, or multiple times within either volume, the court cites to only one such instance.

[2] Not all NROTC program participants are scholarship recipients. See 10 U.S.C. §§ 2104(d), 2107(b)(2); see also BCNR 876-77 (distinguishing between the "NROTC Scholarship Program" and the "NROTC College Program").

95-96. For the Fall 2003, Spring 2004, and Fall 2004 semesters—i.e., the semesters prior to Mr. Kennedy's enrollment in the NROTC program—Mr. Kennedy paid his tuition and fees with a University and Alumni Award, a Supplemental Opportunity Grant, and various student loans. Id. at 65. The Navy paid 100% of Mr. Kennedy's tuition and fees, and provided him with a textbook stipend of $375.00 per term, for the Spring 2005, Fall 2005, and Spring 2006 semesters.[3] Id. at 66-67, 99.

Mr. Kennedy entered Officer Candidate School ("OCS") on May 28, 2006, i.e., at the beginning of the break between his junior and senior years at GW. Id. at 87, 119; accord Am. Compl. ¶ 58. However, he failed to complete OCS and was not recommended to reapply. NSTC 87. Mr. Kennedy departed OCS on June 22, 2006, approximately two weeks prior to the July 7, 2006 scheduled completion date. Id. at 87, 119; accord Am. Compl. ¶ 58, 80-81. His failure to complete OCS led to a Performance Review Board at GW recommending his disenrollment from the NROTC program on August 17, 2006. NSTC 85-86. The Navy officially disenrolled Mr. Kennedy on March 16, 2007, retroactive to October 5, 2006. Id. at 70, 79. Mr. Kennedy alleges that his disenrollment was improper. E.g., Am. Compl. ¶ 227.

Because Mr. Kennedy had been recommended for disenrollment in August 2006, the Navy did not provide scholarship benefits for the remainder of his time at GW, with two exceptions—a $375.00 textbook stipend for the Fall 2006 semester on August 21, 2006, and a daily subsistence allowance through October 4, 2006. NSTC 66-67, 99, 119-20. For the Fall 2006 semester, Mr. Kennedy financed the payment of $16,827.00 in tuition and fees with a University and Alumni Award of $8,750.00 and various student loans. Id. at 66-67. His total charges for that semester were $17,370.00 after accounting for a $543.00 refund. Id. For the Spring 2007 semester, Mr. Kennedy financed the payment of $16,907.00 in tuition and fees with a University and Alumni Award of $8,750.00 and various student loans. Id. at 67. His total charges for that semester were $17,400.00 after accounting for a $493.00 refund. Id. Mr. Kennedy attended law school after graduating from GW. Id. at 11. He was admitted to the Colorado State Bar on October 29, 2012. Attorney Information, Office of Att'y Regulation Counsel, Colo. Sup. Ct., http://www.coloradosupremecourt.com/Search/Attinfo.asp?Regnum=45139 [http://web.archive.org/web/20190830172006/http://www.coloradosupremecourt.com/Search/Attinfo.asp?Regnum=45139].

Mr. Kennedy filed suit in this court on March 5, 2013, and amended his complaint on July 1, 2013. As relevant here, Mr. Kennedy asserts that he is "entitled to the financial assistance that he would have received but for his wrongful disenrollment from the [NROTC] program," Am. Compl. ¶ 227, as well as the "subsistence allowance that he would have received but for his wrongful disenrollment from the [NROTC] program," id. ¶ 234. On a second remand, the BCNR observed that Mr. Kennedy had "previously received waiver of the recoupment of the scholarship benefits he received while enrolled in the [GW] NROTC program," and concluded that he should receive "the balance of the NROTC scholarship benefits

[3] The Navy also paid 100% of Mr. Kennedy's tuition and fees for one three-credit course that he completed during the Summer 2006 semester, which was his only class that term. NSTC 61, 66.

which he would have received had he completed the NROTC program." NSTC 16 (emphasis added); accord id. at 20. Accordingly, the BCNR recommended that the DFAS "complete an audit of [Mr. Kennedy's] records and determine the value of the balance of the remaining three semesters of tuition and fees . . . to which [Mr. Kennedy] was entitled prior to his disenrollment from NROTC," including the textbook stipend and subsistence allowance, and that he "receive payment in the amount of the determined value." Id. at 17 (emphasis added). The Secretary of the Navy's designee approved the BCNR's recommendation on November 29, 2017. Id. at 18.

The BCNR asked the NSTC to provide the DFAS with a determination of the monetary compensation to which Mr. Kennedy would have been entitled had he completed the GW NROTC program so that the DFAS could complete the necessary audit and issue payment. Id. at 3; see also id. at 21 (letter from the NSTC to Mr. Kennedy regarding the BCNR's request). On May 10, 2018, the NSTC determined that Mr. Kennedy was owed $20,644.25, all of which was nontaxable:[4]

Fall 2006

- Tuition and fees charged = $17,370.00
- University and Alumni Award = $8,750.00
- Net = $8,620.00

Spring 2007

- Tuition and fees charged = $17,400.00
- University and Alumni Award = $8,750.00
- Net = $8,650.00

Book stipend
Spring 2007 = $375.00

Subsistence allowance
225 days at $13.33 per day = $2,999.25

Id. at 1. The NSTC based its calculation on the "official invoices" from GW, id. at 28; see also id. at 65-67 (reflecting the GW account summary for Mr. Kennedy's undergraduate career), rather than the GW "Cost of Attendance," id. at 34; see also id. at 62-64 (displaying the GW

[4] The May 10, 2018 NSTC determination letter corrected a May 1, 2018 letter that had referred to a portion of the total amount due to Mr. Kennedy as taxable. Compare NSTC 1 (May 10, 2018 NSTC letter), with id. at 2 (May 1, 2018 NSTC letter).

"Cost of Attendance" figures for the 2004-05, 2005-06, and 2006-07 academic years).[5] The NSTC explained, in prior correspondence with Mr. Kennedy, that Mr. Kennedy was entitled to up to three semesters of tuition reimbursement pursuant to the BCNR's second remand decision because he was awarded a three-year (i.e., six-semester) scholarship but only received benefits for three full semesters. Id. at 29. The NSTC noted, however, that relief was only available for the semesters "following [his] disenrollment from the [NROTC] program"—i.e., Fall 2006 and Spring 2007, but not Fall 2004 (the semester prior to his entry into the program). Id. Mr. Kennedy received the $20,644.25 payment on or about July 26, 2018.[6] Def.'s Mot. J. Administrative R. ("Def.'s MJAR") 12; Pl.'s Resp. Opp'n Def.'s MJAR & Cross-Mot. J. Administrative R. ("Pl.'s C-MJAR") 21.

Following the court's ruling on the proper scope of the administrative record, see Kennedy, 140 Fed. Cl. at 519-20, the parties filed and briefed cross-motions for judgment on the administrative record. Briefing concluded on May 15, 2019, and the court heard argument in Denver, Colorado on August 1, 2019. The parties' cross-motions are now ripe for adjudication.

## II. STANDARD OF REVIEW

It is well understood that although the merits of military personnel decisions are nonjusticiable, courts are nonetheless permitted to review whether such decisions were made in violation of statute, regulation, or procedure. Fisher v. United States, 402 F.3d 1167, 1177, 1180 (Fed. Cir. 2005) (panel portion). In the United States Court of Federal Claims, military pay cases based upon unlawful discharge are resolved on a review of the administrative record "under the same standard as any other agency action." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (citing Martinez v. United States, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc)). Under that standard, the court must determine whether the agency action at issue "is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Id. (quoting Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998)). "'Agency action' is not limited to a correction board's decisions; rather, agency action also includes the implementation of that decision and any recommended relief." Sharpe v. United States, 134 Fed. Cl. 805, 814 (2017), aff'd, --- F.3d ---, No. 18-1406, 2019 WL 4019873 (Fed. Cir. Aug. 27, 2019).

The "arbitrary and capricious" standard is "highly deferential" and requires courts to sustain agency actions that demonstrate "rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

---

[5] Eligibility for student financial assistance at GW is based on the cost of attendance, a student's expected family contribution, and non-GW scholarships. Eligibility Factors, Geo. Wash. Office of Student Fin. Assistance, https://financialaid.gwu.edu/eligibility-factors [http://web.archive.org/web/20190830172247/https://financialaid.gwu.edu/eligibility-factors]. The "Cost of Attendance" represents "an estimate of the expenses a student should expect to incur in a given year." Id.

[6] Whether Mr. Kennedy is ultimately liable for any income taxes in connection with the July 26, 2018 payment, see, e.g., 26 C.F.R. § 1.25A-5(f) (2018), is not at issue in this case.

In other words, courts must conduct a "rational basis" review of the agency action at issue, rather than an "independent de novo assessment." Turner Constr. Co. v. United States, 645 F.3d 1377, 1384-85 (Fed. Cir. 2011); accord Dep't of Commerce v. New York, 139 S. Ct. 2551, 2569 (2019). In doing so, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the record." Bannum, Inc. v. United States, 404 F.3d. 1346, 1356 (Fed. Cir. 2005).

## III. ANALYSIS

At this stage of the case, the question of liability has already been resolved in Mr. Kennedy's favor: the Navy waived Mr. Kennedy's recoupment requirement, reimbursed him for payments made pursuant to that recoupment, and determined that he is entitled to the remaining scholarship benefits that he would have received had he not been improperly disenrolled from the GW NROTC program. The remaining issues concern quantum. Specifically, the court's sole task at this juncture is evaluating the propriety of the NSTC's calculation of Mr. Kennedy's damages award.

### A. Semesters of Relief

The court first addresses the semesters for which Mr. Kennedy is entitled to relief. The parties agree that he is entitled to relief for the Fall 2006 and Spring 2007 semesters, but disagree as to whether relief for the Fall 2004 semester—the semester immediately prior to his enrollment in the NROTC program—is available.

Defendant acknowledges that Mr. Kennedy asserts a statutory (rather than improper withholding) claim pertaining to the Fall 2004 semester, and thus concedes that "whether the mandate rule bars reconsideration of Fall 2004 withholding claims is not before this Court."[7] Def.'s Reply & Opp'n 22. However, Mr. Kennedy's claim for NROTC scholarship benefits for the Fall 2004 semester fails on its merits. Mr. Kennedy was awarded an NROTC scholarship during the Spring 2005 semester and enlisted in the Marine Corps Reserve on March 16, 2005. Mr. Kennedy cites to no authority, nor is the court aware of any, that allows the Navy to provide NROTC scholarship benefits for periods before a participant enrolls in the program.

Rather, the pertinent regulations provide that NROTC scholarship recipients "may be granted the compensation and benefits authorized by law during the basic course . . . and the

---

[7] Defendant is correct that Mr. Kennedy's statutory claim for Fall 2004 benefits is properly before the court. Accordingly, the court acknowledges its misstatement, in its ruling concerning the scope of the administrative record, that "[t]he only remaining claim before the court is Mr. Kennedy's statutory claim . . . for the Fall 2006 and Spring 2007 semesters," Kennedy, 140 Fed. Cl. at 519, and therefore exercises its discretion to correct its misstatement.

advanced course." BCNR 917 (emphases added) (CNETINST 1533.12G ¶ 301(a)).[8] The "basic course" consists of "NROTC students" in their first and second years of the program, whereas the "advanced course" consists of "NROTC students" in their third and fourth years of the program. Id. at 920 (CNETINST 1533.12G ¶ 301(j)). In other words, "[s]tudents must be participating in regularly scheduled activities . . . to receive benefits." Id. at 1001 (CNETINST 1533.12G ¶ 601(d)); see also id. at 1006 (CNETINST 1533.12G ¶ 610(a)) (indicating that scholarship funds are subject to the general limitations set forth in Article 601 of CNETINST 1533.12G). Specifically, scholarship assistance "is authorized only while receiving subsistence payments," id. at 1006 (CNETINST 1533.12G ¶ 610(a)), entitlement to which "begins on the day appointed as Midshipman," id. at 1002 (CNETINST 1533.12G ¶ 602(a)(1)). Since the applicable regulations unequivocally provide that students may receive NROTC scholarship benefits only while enrolled in the NROTC program, an interpretation that benefits are retroactively available for semesters prior to enrollment is unreasonable. See Rosenberg v. Peake, 296 F. App'x 53, 55 (Fed. Cir. 2008) (unpublished per curiam decision) ("Indeed, a midshipman appointee is not even eligible to receive financial assistance in a [10 U.S.C. § 2107] program until the statutorily required [enlistment] contract is executed. . . . [T]he Appropriations Clause prevents the judiciary from granting a statutorily ineligible claimant public funds . . . .").

That Mr. Kennedy was awarded a three-year NROTC scholarship is of no moment. The three-year time frame referenced in Mr. Kennedy's scholarship service agreement was a maximum, not a minimum, and began with his enrollment in the program during the Spring 2005 semester. NROTC program participants may receive scholarship benefits only "for the length of the scholarship award," which can include a fifth year of academic study, if necessary, to complete degree requirements. BCNR 1001 (CNETINST 1533.12G ¶ 601(c)). Accordingly, it was not unreasonable for the Navy to award Mr. Kennedy a three-year scholarship during the second semester of his sophomore year. However, Mr. Kennedy would not have been eligible for fifth-year benefits because he completed his undergraduate degree in Spring 2007. See also Scholarship Benefits, Naval Reserve Officers Training Corps, https://www.nrotc.navy.mil/scholarship_benefits.html [http://web.archive.org/web/20190830172614/https://www.nrotc.navy.mil/scholarship_benefits.html] ("Length of the scholarship is predicated upon the student's degree plan. Students will receive scholarship benefits only for the time required to complete their baccalaureate degree or initial length of scholarship, whichever comes first."). Mr. Kennedy's reliance on the BCNR's recommendation that he should receive payment for the "value of the balance of the remaining three semesters of tuition and fees [plus the textbook

[8] Pages 226 through 1278 of Volume I of the administrative record is a copy of Mr. Kennedy's application, including exhibits, to correct his military records. Pages 876 through 1048 of that volume contain a complete copy of Chief of Naval Education and Training Instruction 1533.12G (August 9, 2002): Regulations for the Administration and Management of the NROTC ("CNETINST 1533.12G"), as do pages 579 through 751. CNETINST 1533.12G was in effect for the time periods at issue in this case. For the sake of simplicity, the court cites to the former page range. However, even if it was not contained within the administrative record, the parties could freely cite to, and the court could properly consider, CNETINST 1533.12G because it is a publicly available document.

stipend and subsistence allowance] for the six-semester NROTC scholarship," NSTC 17, misses the mark. The BCNR explicitly limited such relief to the amount "to which [Mr. Kennedy] was entitled prior to his disenrollment from NROTC," id. (emphasis added), and he was never entitled to benefits for the Fall 2004 semester. Indeed, in its case summary following the second remand, the BCNR described the additional "three semesters" for which Mr. Kennedy had not received scholarship benefits as having been "completed after his disenrollment." BCNR 48 (emphasis added).

In sum, because Mr. Kennedy enlisted in the Marine Corps Reserves on March 16, 2005, in connection with receiving a three-year NROTC scholarship, he was eligible to receive a maximum of three years of scholarship benefits beginning with the Spring 2005 semester. Pursuant to CNETINST 1533.12G, he was not eligible to receive any benefits for the Fall 2004 semester because that semester occurred prior to his enlistment. Therefore, the NSTC correctly determined that no scholarship benefits were available to Mr. Kennedy for the Fall 2004 semester.

### B. Subsistence Allowance

The next area of dispute concerns Mr. Kennedy's entitlement to the subsistence allowance for his senior year. As the court previously explained, the additional subsistence allowance to which Mr. Kennedy was entitled can be computed by "multiplying the applicable daily rate by the number of additional days to which Mr. Kennedy was entitled to the allowance." Kennedy, 140 Fed. Cl. at 519. The NSTC calculated that allowance to be $2,999.25 by multiplying 225 days by a rate of $13.33 per day. The court must therefore consider whether the NSTC (1) applied the proper rate for the subsistence allowance and (2) used the correct number of days.

#### 1. Applicable Rate

The Military Pay Act provides that NROTC scholarship students in advanced training are entitled to a subsistence allowance of $250.00 to $674.00 per month, with the specific amount to be "prescribe[d] by regulation." 37 U.S.C. § 209(a)(2). Per regulation, subsistence allowances for NROTC seniors and fifth-year students were set at $400.00 per month beginning October 1, 2002. BCNR 1002 (CNETINST 1533.12G ¶ 602(a)).

As Mr. Kennedy observes, the monthly subsistence allowance for seniors was raised to $500.00 effective October 1, 2005. Department of Defense Financial Management Regulation ("DoD 7000.14-R"), vol. 7A, ch. 59, ¶ 590103 (Dec. 2005), https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07aarch/07a_59_Dec05.pdf [http://web.archive.org/web/20190830172923/https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07aarch/07a_59_Dec05.pdf].[9] However, Mr. Kennedy fails to recognize that the increased monthly rate was designated as an "alternative rate[]" that was only available "if approved by the Secretary

[9] Mr. Kennedy attached a copy of DoD 7000.14-R, volume 7A, chapter 59 as Exhibit 5 to his cross-motion for judgment on the administrative record.

concerned." Id. There is no indication that the higher rate was approved by the Secretary of the Navy at the time of the events in question. Nor is there any indication that the higher rate has ever been approved. With respect to the subsistence allowance, the current version of the regulation (as of the date of this opinion) contains a hyperlink to a table on the DFAS website rather than including the table within the manual itself. DoD 7000.14-R, vol. 7A, ch. 59, ¶ 590301 (Jan. 2019), https://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07a.pdf [http://web.archive.org/web/20190830173217/https://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07a.pdf].[10] That table—which was last updated on December 11, 2018 (as of the date of this opinion)—contains the same rates and effective dates as the December 2005 version of the regulation, and a similar caveat: a notation that the October 1, 2005 rates are "alternative rates" which are "payable if approved by the Secretary of Defense." Senior ROTC Monthly Subsistence Allowance, Def. Fin. & Acct. Serv., https://www.dfas.mil/militarymembers/payentitlements/Pay-Tables/SROTC.html [http://web.archive.org/web/20190830181646/https://www.dfas.mil/militarymembers/payentitlements/Pay-Tables/SROTC.html]. In addition, the NROTC website currently lists the subsistence allowance for seniors as $400.00 for "each academic month." Scholarship Benefits, supra.

Mr. Kennedy further objects to the daily calculation of the subsistence allowance—as set forth in Article 602(a)(3) of CNETINST 1533.12G, see BCNR 1002—under the theory that 37 U.S.C. § 209 provides for a monthly subsistence allowance. Mr. Kennedy's position is unavailing for three reasons. First, the statute expressly provides that the specific rates for the subsistence allowance "shall [be] prescribe[d] by regulation." 37 U.S.C. § 209(a)(2). Second, Mr. Kennedy is incorrect in his assertion that "CNETINST 15[33].12G is immaterial," Pl.'s C-MJAR 21, with respect to the subsistence allowance. Mr. Kennedy acknowledges that DoD 7000.14-R is promulgated by the Secretary of Defense. Id. That regulation explicitly provides that "[d]etailed instructions governing the payment of subsistence allowance" for NROTC members are contained within the CNETINST 1533.12 series. DoD 7000.14-R, vol. 7A, ch. 59, ¶ 590106 (Dec. 2005). In other words, the Secretary of Defense, the individual charged by statute with the responsibility for prescribing regulations pertaining to the subsistence allowance, has delegated that authority to the Chief of Naval Education and Training. CNETINST 1533.12G—the version of the CNETINST 1533.12 series that was in effect during GW's Fall 2006 and Spring 2007 semesters—is thus the appropriate authority concerning Mr. Kennedy's entitlement to the subsistence allowance during his senior year. Third, as explained above, benefits are only available during the basic and advanced courses of the NROTC program, the latter of which concludes upon graduation. Accord 37 U.S.C. § 209(a)(1) (providing that the monthly subsistence allowance ends upon graduation). Because benefits are only payable through a student's graduation date, use of a daily rate is necessary for the Navy to pay the proper amount.

---

[10] The paragraphs within DoD 7000.14-R, volume 7A, chapter 59 were reorganized and renumbered between the December 2005 and January 2019 issue dates.

In sum, the court concludes that the applicable subsistence allowance for Mr. Kennedy's senior year, i.e., the Fall 2006 and Spring 2007 semesters, is $400.00 per month, payable at a rate of $13.33 per day. In other words, the NSTC applied the proper rate for the subsistence allowance.

**2. Number of Days**

In addition to disputing the rate at which Mr. Kennedy would have been entitled to a subsistence allowance during his senior year, the parties dispute the length of time for which Mr. Kennedy was entitled to that allowance. Defendant avers that 225 days is the proper amount of time based on GW's academic calendar, whereas Mr. Kennedy asserts that he should have been paid the allowance for ten full months because his senior year began in August 2006 and concluded in May 2007.

Mr. Kennedy is not entitled to ten full months of the subsistence allowance for three reasons. First, as he acknowledged at oral argument, Mr. Kennedy has already received the allowance through October 4, 2006. Second, he officially graduated from GW on May 20, 2007—not at the end of the month.[11] See Geo. Wash. Undergraduate Programs Bulletin 2006-2007 ("GW Bulletin 2006-2007"), at 6-7, http://bulletin.gwu.edu/archives/2006-2007-GW-Undergraduate-Bulletin.pdf [http://web.archive.org/web/20190830174110/http://bulletin.gwu.edu/archives/2006-2007-GW-Undergraduate-Bulletin.pdf]; see also Def.'s MJAR 26 (describing the Spring 2007 semester as ending on May 20, 2007). Indeed, Navy records show that Mr. Kennedy would have received his commission as a second lieutenant in the Marine Corps on or about May 18, 2007, had he successfully completed the NROTC program. NSTC 119. Third, as explained above, the subsistence allowance is payable on a daily basis.

Since Mr. Kennedy's estimated date of commissioning was May 18, 2007, he would not have received a subsistence allowance beginning with that date. In other words, absent his improper disenrollment from the NROTC program, he would have received a subsistence allowance from October 5, 2006, through May 17, 2007—a period of 225 days. Therefore, with respect to his subsistence allowance, the NSTC did not err in computing Mr. Kennedy's entitlement.

---

[11] At oral argument, Mr. Kennedy averred that his commencement ceremony took place on May 19, 2007.

### C. Textbook Stipend

The next area of dispute concerns the textbook stipend to which Mr. Kennedy was entitled for his senior year. The NSTC determined that Mr. Kennedy was entitled to a $375.00 textbook stipend for the Spring 2007 semester. Mr. Kennedy contends that he was entitled to a $500.00 stipend for each of the Fall 2006 and Spring 2007 semesters.[12]

The Secretary of the Navy has the authority to pay an NROTC scholarship recipient's textbook expenses. 10 U.S.C. § 2107(c)(1). Pursuant to DoD 7000.14-R, the provisions pertaining to the textbook stipend for NROTC program participants are contained in the "CNET Instruction 7330.3 series." DoD 7000.14-R, vol. 7A, ch. 59, ¶ 590502 (Dec. 2005). The Navy "has been unable to find a copy" of any version of CNETINST 7330.3 in the National Archives or elsewhere; although the Navy "continu[es] to search for the instruction, [the Navy] has low confidence in its ability to locate the document."[13] Def.'s Third Not. 1. Nevertheless, Mr. Kennedy received a $375.00 textbook stipend for the Spring 2005, Fall 2005, Spring 2006, and Fall 2006 semesters while enrolled in the NROTC program. That amount has not changed in the ensuing years—it remains $375.00 per semester to this day. Naval Service Training Command Manual 1533.2C CH-2 (Jan. 2019): Regulations for Officer Development 7-3 (providing that the textbook stipend is "limited to $750 annually"); see also Scholarship Benefits, supra (listing the textbook stipend as "$750 per academic year," i.e., "$375 per semester"). Thus, instead of relying on a regulation that was in force during 2006 and 2007 specifying the discrete amount of the textbook stipend because there was no such regulation that either the court or the parties can locate, the NSTC simply utilized the amount that Mr. Kennedy had been receiving while in the NROTC program, which is the same amount that NROTC students today continue to receive.

Mr. Kennedy bases his argument that he should have received a $500.00 textbook stipend for each semester of his senior year on (1) the provision in 10 U.S.C. § 2107(c)(1) that the Navy "may provide for the payment of all expenses . . . including tuition, fees, books, and laboratory expenses" for NROTC scholarship recipients (emphasis added) and (2) the GW "Cost of Attendance" figures listing $1,000.00 in estimated "Books and Supplies" expenses for the entire year. See Pl.'s C-MJAR 18 (citing NSTC 64). However, as defendant observes, the amount of the textbook stipend is set by regulation, not by individual universities. Further, the $1,000.00 figure supplied by GW is inapposite with respect to the textbook stipend for two reasons. First, it is only an estimated expense. Second, it includes not only books but educational supplies as well. The distinction matters because NROTC regulations contained within CNETINST 1533.12G differentiate between "[e]xpendable supplies such as pencils, pens, films, art supplies,

---

[12] Mr. Kennedy also contends that he should be awarded a $375.00 textbook stipend for Fall 2004. However, as discussed above, Mr. Kennedy is not entitled to relief for the Fall 2004 semester. See supra Section III.A.

[13] The reference to the CNETINST 7330.3 series may reflect a typographical error. Indeed, the current version of DoD 7000.14-R references the "NSTC Manual 1533.2C Series" with respect to the textbook stipend for NROTC students. DoD 7000.14-R, vol. 7A, ch. 59, ¶ 590205 (Jan. 2019).

etc." and "[t]extbook costs." BCNR 1008 (CNETINST 1533.12G ¶ 610(e)). In any event, those same regulations list both "[e]xpendable supplies" and "[t]extbook costs not covered by the textbook stipend" under the subheading "Expenses Paid by the Individual Student." Id. (emphasis added). In other words, the Navy is not obligated to pay for textbook costs of NROTC scholarship recipients that are "not covered by the textbook stipend." Id. Indeed, the statute that Mr. Kennedy relies on is permissive, not mandatory. See Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretionary."). Accordingly, Mr. Kennedy's argument that he is entitled to reimbursement for the full amount of his estimated costs for textbooks and supplies is unpersuasive.

In sum, the NSTC reasonably determined that Mr. Kennedy was entitled to a $375.00 textbook stipend for each semester of his senior year. Because Mr. Kennedy has already received payment accordingly—for the fall semester, from the NROTC while enrolled in the program and for the spring semester, from the DFAS in July 2018—he is not entitled to any additional compensation.

### D. Tuition and Fees

The final area of dispute concerns the amount of tuition that the NROTC would have paid to GW on Mr. Kennedy's behalf for his senior year. Defendant contends that Mr. Kennedy has been made whole as a result of the DFAS payment in July 2018, whereas Mr. Kennedy maintains that the NSTC improperly reduced his tuition compensation by the amount of his University and Alumni Award.

The Secretary of the Navy is authorized to "provide for the payment of all expenses in his department of administering the financial assistance program under [10 U.S.C. § 2107], including tuition, fees, books, and laboratory expenses." 10 U.S.C. § 2107. Under applicable regulations, "educational expenses" include tuition plus other fees that are "required by the institution of all full-time undergraduate students"—in other words, costs that are "not optional" and "cannot be rejected by the student." BCNR 1006-07 (CNETINST 1533.12G ¶ 610(b)(1)-(2)). However, not all fees are included; specifically, "special interest elective courses requiring additional fees" are not covered by the NROTC scholarship. Id. at 1007 (CNETINST 1533.12G ¶ 610(b)(3)). Similarly, "[r]efundable fees," "[d]elinquent fees," tuition and fees for remedial work, and "[b]oard, lodging, and other living expenses" are also excluded. Id. at 1008 (CNETINST 1533.12G ¶ 610(e)). In other words, the use of "all expenses" in 10 U.S.C. § 2107 refers to the Navy's expenses in operating the NROTC scholarship program rather than the expenses incurred by individual students such as Mr. Kennedy.

GW's educational service agreement with the NROTC provided that the Navy would "pay for services under [GW's] normal schedule of tuition and fees applicable to the public and in effect at the time the services are rendered."[14] NSTC 103. In other words, the Navy agreed to pay "the normal tuition and fees which [GW] charges any student pursuing the same or similar curricula." Id. at 104 (emphasis added). The Navy was entitled to a credit against such charges if students withdrew or for "any other cause under [GW's] standard procedures." Id. at 106 (emphasis added). GW and the NROTC defined tuition as "the amount of money charged by an educational institution for instruction," and defined fees as "applicable charges directly related to enrollment" excluding "[c]harges for services of a personal nature, such as food, housing, and laundry." Id. at 112.

For each semester of Mr. Kennedy's senior year, the NSTC began its calculations with the tuition and fees charged. The NSTC used $17,370.00 for the Fall 2006 semester and $17,400.00 for the Spring 2007 semester, which it derived from the total charges listed for each semester on Mr. Kennedy's GW account summary. See id. at 1 (calculation details), 66-67 (account summary). The actual tuition charges listed for each semester on Mr. Kennedy's GW account summary were $16,795.00, id. at 66-67, which is the amount to which Mr. Kennedy argues he is entitled, Pl.'s C-MJAR 17. The discrepancies are explained as follows:

Fall 2006

- $543.00 student refund
- $20.00 Political Science course fee
- $12.00 Student Association fee

Spring 2007

- $493.00 student refund
- $100.00 graduation application fee
- $12.00 Student Association fee

NSTC 66-67. The Political Science course fee, the Student Association fees, and the graduation application fee are all compensable because they are nonoptional fees that cannot be declined. Indeed, the Navy paid Mr. Kennedy's lab fees, registration fees, course fees, and the Student Association fee for the Spring 2005, Fall 2005, and Spring 2006 semesters pursuant to his NROTC scholarship. Id. at 66. The student refunds are not compensable because they do not reflect charges for tuition and fees. Thus, as an initial matter (before addressing the impact of the University and Alumni Award), the DFAS overpaid Mr. Kennedy by a total of $1,036.00 (the sum of the two student refunds) in July 2018 with respect to tuition and fees. However, because

[14] The educational service agreement contained within the administrative record was entered into on September 12, 2006, i.e., after the beginning of the Fall 2006 semester. NSTC 103. It is nevertheless the appropriate version of the agreement to consider because GW was not permitted to invoice the Navy prior to October 1, 2006, for that semester. Id. at 105.

defendant does not raise this issue, any such argument is deemed waived.[15] Cf., e.g., Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (explaining that "[a]s a matter of litigation fairness and procedure, . . . a party waives arguments based on what appears in its [opening] brief" since the opposing party typically lacks the "right to respond to the reply brief"); Energy Nw. v. United States, 91 Fed. Cl. 531, 554 (2010) ("Defendant's own failure, however, to plead the BPA payment . . . at any time prior to trial . . . has the effect of an unfair surprise. This Court holds the issue waived." (citation omitted)), rev'd in part on other grounds, 641 F.3d 1300 (Fed. Cir. 2011). Accordingly, for purposes of this litigation, Mr. Kennedy's tuition and fees were $17,370.00 for the Fall 2006 semester and $17,400.00 for the Spring 2007 semester before accounting for the University and Alumni Award.

Using these amounts as its starting point, the NSTC then subtracted the amount of Mr. Kennedy's University and Alumni Award for the Fall 2006 and Spring 2007 semesters, i.e., $8,750.00 per term, to determine the net amount to which he was entitled with respect to tuition and fees for those semesters. The University and Alumni Award at GW is a need-based grant provided and paid for by the university; it is awarded to undergraduate students demonstrating financial need, and "can be used only towards tuition expenses." University and Alumni Award, Geo. Wash. Office of Student Fin. Assistance, https://financialaid.gwu.edu/university-and-alumni-award [http://web.archive.org/web/20190830174425/https://financialaid.gwu.edu/university-and-alumni-award].

Mr. Kennedy contends that the amount he is owed for tuition and fees should not be offset by the amount of his University and Alumni Award. This contention falls flat for two independent reasons. First, the NROTC scholarship provides payments only for amounts that GW regularly charges similarly situated students. Effectively, GW does not charge its University and Alumni Award recipients full tuition because their tuition is offset by the amount of the award. (As noted above, the University and Alumni Award is paid for by GW and thus is not an "outside" scholarship.) Second, pursuant to the educational service agreement between GW and the NROTC, the Navy's obligation to pay tuition is offset by any credits applied to student accounts—not just when students withdraw but also for "any other cause" under GW's standard procedures. Application of the University and Alumni Award to student accounts certainly fits within the paradigm of GW's standard procedures. Indeed, the relevant version of the GW Bulletin explicitly addresses the situation at issue here: "In the case of a student who is awarded tuition scholarships, grants, or awards from more than one source, the combined amount cannot exceed tuition charges." GW Bulletin 2006-2007, supra, at 40. The tuition portion of the NROTC scholarship and the University and Alumni Award cannot combine to provide a student with awards exceeding tuition and fees charges because each such award is given for the sole purpose of reducing a student's tuition.

---

[15] Although Mr. Kennedy asserts entitlement to a lower amount ($16,795.00 for each semester, reflecting tuition only) than his compensable tuition and fees ($16,827.00 for the Fall 2006 semester and $16,907.00 for the Spring 2007 semester), he still posits that he is entitled to higher amounts than that which he was actually paid.

In sum, the NSTC properly offset Mr. Kennedy's tuition entitlement by the amount of his University and Alumni Award for the Fall 2006 and Spring 2007 semesters. Accordingly, the NSTC did not err in calculating the tuition and fees portion of the benefits to which Mr. Kennedy was entitled as a result of his improper disenrollment from the NROTC.

## IV. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, meritless, or unnecessary for resolving the issues currently before the court.

Mr. Kennedy is entitled, as a result of his improper disenrollment from the NROTC program at GW, to the remaining financial benefits that he would have received had he remained in the program. He received full scholarship benefits for the Spring 2005, Fall 2005, and Spring 2006 semesters. The NSTC correctly determined that no relief is available for the Fall 2004 semester because that semester took place prior to the date on which Mr. Kennedy executed his enlistment agreement. The NSTC also correctly determined that for his senior year—i.e., the Fall 2006 and Spring 2007 semesters—Mr. Kennedy is entitled to a subsistence allowance of $400.00 per month, paid at a rate of $13.33 per day; a textbook stipend of $375.00 per semester; and full tuition and fees as charged by GW, reduced by the amount of his University and Alumni Award. Mr. Kennedy has already received payment for the amounts due him as computed by the NSTC, which properly accounted for amounts paid to him while still in the program.

Accordingly, the court **GRANTS** defendant's motion for judgment on the administrative record and **DENIES** Mr. Kennedy's cross-motion for judgment on the administrative record. No costs. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge